In The

# United States Court Of Appeals
## For The Fourth Circuit

**DEMETRIC SIMON,**

*Plaintiff – Appellant,*

**v.**

**KEITH GLADSTONE; ROBERT HANKARD; WAYNE JENKINS;
BALTIMORE CITY POLICE DEPARTMENT; CARMINE VIGNOLA;
BENJAMIN L. FRIEMAN; RYAN GUINN; DEAN PALMERE; SEAN MILLER,**
*Defendants – Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND AT BALTIMORE

––––––––––––––––

## BRIEF OF APPELLEES

––––––––––––––––

EBONY M. THOMPSON
  **Acting City Solicitor**

MICHAEL REDMOND
  **Director, Appellate Practice Group**

James A. H. Corley
Alexa E. Ackerman
  **Chief Solicitors**

BALTIMORE CITY DEPARTMENT OF LAW
**100 N. Holliday Street
Baltimore, Maryland 21202
(410) 396-7536
michael.redmond@baltimorecity.gov
jim.corley@baltimorecity.gov
alexa.ackerman@baltimorecity.gov**

*Counsel for Defendants-Appellees*

*Gibson*Moore Appellate Services, LLC
206 East Cary Street ♦ P.O. Box 1460 (23218) ♦ Richmond, VA 23219
804-249-7770 ♦ www.gibsonmoore.net

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __23-1431__          Caption: __Demetric Simon v. Keith Gladstone__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Baltimore City Police Department, Benjamin L. Frieman, Keith Gladstone, Ryan Gunn, Robert Hankard,__
(name of party/amicus)

__Wayne Jenkins, Sean Miller, Dean Palmere and Carmine Vignola__

 who is _____appellees_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.     Is there any other publicly held corporation or other publicly held entity that has a direct
       financial interest in the outcome of the litigation?                     ☐YES ☑NO
       If yes, identify entity and nature of interest:

5.     Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
       If yes, identify any publicly held member whose stock or equity value could be affected
       substantially by the outcome of the proceeding or whose claims the trade association is
       pursuing in a representative capacity, or state that there is no such member:

6.     Does this case arise out of a bankruptcy proceeding?                     ☐YES ☑NO
       If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
       party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
       caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
       corporation that owns 10% or more of the stock of the debtor.

7.     Is this a criminal case in which there was an organizational victim?     ☐YES ☑NO
       If yes, the United States, absent good cause shown, must list (1) each organizational
       victim of the criminal activity and (2) if an organizational victim is a corporation, the
       parent corporation and any publicly held corporation that owns 10% or more of the stock
       of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Michael Redmond _____     Date: _____ 4/21/23 _____

Counsel for: Appellees _____

Print to PDF for Filing

# TABLE OF CONTENTS

**Page:**

TABLE OF AUTHORITIES ....................................................................................iv

JURISDICTIONAL STATEMENT ........................................................................1

STATEMENT OF THE ISSUES.............................................................................1

INTRODUCTION ...................................................................................................2

STATEMENT OF THE CASE................................................................................2

SUMMARY OF THE ARGUMENT ......................................................................3

ARGUMENT ..........................................................................................................4

    I.    THE DISTRICT COURT PROPERLY GRANTED APPELLEES' MOTIONS TO DISMISS ...........................................4

        a.    STANDARD OF REVIEW ......................................................5

        b.    THE DISTRICT COURT PROPERLY HELD THAT APPELLANT'S CLAIMS ARE ALL BARRED BY THE RELEVANT STATUTES OF LIMITATIONS ........................7

            i.    APPELLEES CITED VOLUMINOUS INFORMATION TO ESTABLISH APPELLANT WAS ON REASONABLE INQUIRY NOTICE OF HIS POTENTIAL CLAIMS PRIOR TO MARCH 6, 2018 ...........................................................................10

                1.    Pre-incident lawsuits and allegations of misconduct...........................................................11

                2.    Appellant's 2014 arrest and 2015 dismissal of charges and release .........................................12

                3.    August 10, 2016 U.S. Department of Justice Report ...............................................................14

4. February 23, 2017 GTTF Indictments ................15

5. January 5, 2018 – Jenkins' Guilty Plea Hearing ................................................16

6. January 23 & 29, 2018 - Trial Testimony of Evodio Hendrix and Maurice Ward ....................18

ii. THE 2019 AND 2020 RELEASES OF GLADSTONE AND HANKARD'S INDICTMENTS ARE IRRELEVANT .........................20

iii. APPELLANT'S RELIANCE ON *GREENE V. PRO FOOTBALL, INC*. IS MISPLACED.....................21

c. APPELLANT'S CLAIMS ARE NOT SAVED BY THE DOCTRINES OF EQUITABLE TOLLING OR FRAUDULENT CONCEALMENT.........................................25

i. APPELLANT'S CLAIMS ARE NOT SAVED BY THE DOCTRINE OF EQUITABLE TOLLING ...........27

ii. APPELLANT'S CLAIMS ARE NOT SAVED BY THE DOCTRINE OF FRAUDULENT CONCEALMENT ...........................................28

iii. APPELLANT DID NOT SUFFICIENTLY RAISE EQUITABLE TOLLING OR FRAUDULENT CONCEALMENT WITH THE DISTRICT COURT AND THUS, HAS NOT PRESERVED THOSE ISSUES FOR APPEAL ....................................30

d. SIMON'S CLAIMS ARE TIME-BARRED ...........................32

i. SIMON'S *MONELL* CLAIMS ARE TIME-BARRED ....................................................................33

ii. SIMON'S RICO CLAIMS ARE TIME-BARRED........36

II.    THE LENGTHY DOCUMENTS AND VIDEO REFERENCED IN THE AMENDED COMPLAINT BY HYPERLINK ALONE WERE PROPERLY EXCLUDED FROM THE DISTRICT COURT'S CONSIDERATION ..........................................................37

    a.    STANDARD OF REVIEW ......................................................38

    b.    THE MATERIALS REFERENCED IN THE AMENDED COMPLAINT VIA HYPERLINK OR ATTACHED AS EXHIBITS TO APPELLANT'S OPPOSITION TO APPELLEES' MOTIONS TO DISMISS WERE NOT INTEGRAL TO HIS AMENDED COMPLAINT ...................39

    c.    APPELLANT'S CITED CASE LAW IS DISTINGUISHABLE AND INAPPLICABLE TO THE INSTANT CASE ....................................................................41

III.    THERE IS NO NEED TO CERTIFY QUESTIONS TO THE SUPREME COURT OF MARYLAND AS TO EQUITABLE TOLLING OR FRAUDULENT CONCEALMENT ..........................43

CONCLUSION ...........................................................................................45

CERTIFICATE OF COMPLIANCE ......................................................46

# TABLE OF AUTHORITIES

**Page(s):**

**Cases:**

*ACA Fin. Guar. Corp. v. City of Buena Vista, Virginia*,
    917 F.3d 206 (4th Cir. 2019) ...................................................................5, 6

*Adedje v. Westat, Inc.*,
    214 Md. App. 1 (2013) ..............................................................................44

*Arvon v. Shakiba*,
    2017 WL 1592555 (Md. Ct. Spec. App. May 1, 2017)...............................28

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ...........................6

*Bailey v. Glover*,
    88 U.S. 342 (1874).....................................................................................29

*Baldwin County Welcome Ctr. v. Brown*,
    466 U.S. 147 (1984)...................................................................................26

*Belanger v. BNY Mellon Asset Mgmt., LLC*,
    307 F.R.D. 55 (D. Mass. 2015) .................................................................37

*Belcher v. Oliver*,
    898 F.2d 32 (4th Cir. 1990) .......................................................................33

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ...........................6

*Caples v. City of Phoenix*,
    CV-14-02619-PHX-SRB,
    2018 WL 4042115 (D. Ariz. June 28, 2018), *aff'd*,
    804 F. App'x 595 (9th Cir. 2020) ..............................................................34

*Chambers v. N. Carolina Dep't of Justice*,
    66 F.4th 139 (4th Cir. 2023) ........................................................................5

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002) .................................................................. 39-40

*Chao v. Virginia Dept. of Transp.*,
291 F.3d 276 (4th Cir. 2002) ......................................................................25

*Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*,
794 F. Supp. 2d 602 (D. Md. 2011)..............................................................40

*Ciralsky v. CIA*,
355 F.3d 661 (D.C. Cir. 2004)......................................................................38

*City of Canton v. Harris*,
489 U.S. 378 (1989)......................................................................................33

*Colonial Penn Ins. Co. v. Coil*,
887 F.2d 1236 (4th Cir. 1989) ......................................................................17

*Conaway v. State*,
90 Md. App 234 (1992) .................................................................................21

*Cruz v. Maypa*,
773 F.3d 138 (4th Cir. 2014) ........................................................................25

*CVLR Performance Horses, Inc. v. Wynne*,
792 F.3d 469 (4th Cir. 2015) ..........................................................................9

*DeFina v. Latimer*,
79 F.R.D. 5 (E.D.N.Y. 1977).........................................................................37

*Dewitt v. Ritz*,
No. CV DKC 18-3202, 2021 WL 915146 (D. Md. Mar. 10, 2021)..............17

*Doe v. Archdiocese of Washington*,
114 Md. App. 169 (1997) ..............................................................................25

*Doe v. Maskell*,
342 Md. 684 (1996) .......................................................................................44

*Drubetskoy v. Wells Fargo Bank, N.A.*,
2013 WL 6839508 (D. Md. Dec. 20, 2013) ..................................................17

*Dual Inc. v. Lockheed Martin Corp.*,
383 Md. 151 (2004) ...............................................................25, 44

*Edmonson v. Eagle Nat'l Bank*,
922 F.3d 535 (4th Cir. 2019) .................................................27, 28

*Elat v. Ngoubene*,
993 F. Supp. 2d 497 (D. Md. 2014)...............................................28

*English v. Pabst Brewing Co.*,
828 F.2d 1047 (4th Cir. 1987) ......................................................28

*Estate of Knight*,
182 F.3d 908, 1999 WL 390987 (4th Cir. 1999).........................21

*Fayetteville Investors v. Commercial Builders, Inc.*,
936 F.2d 1462 (4th Cir. 1991) ................................................41, 42

*Feritta v. Bay Shore Dev. Corp.*,
252 Md. 393 (1969) .......................................................................26

*Frederick Rd. Ltd. P'ship v. Brown & Sturm*,
360 Md. 76 (2000) ................................................................. 44-45

*Gantt v. Sutton*,
225 Fed. Appx. 197 (4th Cir. 2007) .............................................38

*GO Computer, Inc. v. Microsoft Corp.*,
508 F.3d 170 (4th Cir. 2007) .......................................................29

*Goines v. Valley Cmty. Services Bd.*,
822 F.3d 159 (4th Cir. 2016) ..................................................39, 40

*Green v. Pro Football, Inc.*,
31 F. Supp. 3d 714 (2014) ....................................................*passim*

*Gross v. Hopkins*,
2021 WL 978822 (D. Md. March 15, 2021) .................................21

*Holland v. Florida*,
560 U.S. 631 (2010).......................................................................28

*Hosley v. Collins*,
    90 F.R.D. 122 (D. Md. 1981) ....................................................................37

*In re Human Genome Scis. Inc. Sec. Litig.*,
    933 F. Supp. 2d 751, 2013 WL 1223344 (D. Md. 2013) ..............................14

*In re Inspire Pharms., Inc. Sec. Litig.*,
    515 F. Supp. 2d 631 (M.D.N.C. 2007) .........................................................14

*In re Under Seal*,
    749 F.3d 276 (4th Cir. 2014) ................................................................31, 32

*In re Westinghouse Sec. Litig.*,
    90 F.3d 696 (3d Cir. 1996) ...........................................................................39

*Irwin v. Dep't of Veterans Affairs*,
    498 U.S. 89 (1990)........................................................................................28

*Jersey Heights Neighborhood Ass'n v. Glendening*,
    174 F.3d 180 (4th Cir. 1999) ..........................................................................8

*Johnson v. Pozen Inc.*,
    No. 7–599, 2009 WL 426235 (M.D.N.C. Feb. 19, 2009) .............................14

*King-White v. Humble Indep. Sch. Dist.*,
    803 F.3d 754 (5th Cir. 2015) ........................................................................34

*Lawson v. Rochester City Sch. Dist.*,
    446 F. App'x 327 (2d Cir. 2011)...................................................................34

*Lehman v. United States.*,
    154 F.3d 1010 (9th Cir. 1998), *cert. denied*,
    526 U.S. 1040 (1999) ...................................................................................26

*Lloyd v. Ocean Twp. Counsel*,
    2021 WL 1608553 (3d Cir. Apr. 26, 2021)..................................................12

*Lomax v. Police Chief of Erie*,
    452 Fed. Appx. 83 (3d Cir. 2011) ................................................................13

*Lomax v. State of Maryland*,
　　258 Md. App. 386 (2023) .......................................................42, 43

*Lozano v. Montoya Alvarez*,
　　572 U.S. 1 (2014).....................................................................25

*Lumsden v. Design Tech Builders Inc.*,
　　749 A.2d 796 (Md. 2000) .....................................................10, 20

*Maryland State Conference of NAACP Branches v. Baltimore City Police Dept.*,
　　No. CIV CCB-06-1863, 2006 WL 3626898 (D. Md. Dec. 1, 2006).............11

*Monell v. Dep't of Soc. Servs.*,
　　436 U.S. 658 (1978)..................................................................*passim*

*Nasim v. Warden*,
　　64 F.3d 951 (4th Cir. 1995) ......................................................10

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
　　591 F.3d 250 (4th Cir. 2009) .....................................................5

*Occupy Columbia v. Haley*,
　　738 F.3d 107 (4th Cir. 2013) .....................................................42

*Owens v. Balt. City State's Attorneys' Office*,
　　767 F.3d 379 (4th Cir. 2014) ................................................20, 33

*Parkway 1046, LLC v. U.S. Home Corp.*,
　　961 F.3d 301 (4th Cir. 2020) .....................................................5

*Philips v. Pitts County Memorial Hospital*,
　　572 F.3d 176 (4th Cir. 2009) .....................................................17

*Pinaud v. Cty. of Suffolk*,
　　52 F.3d 1139 (2d Cir. 1995) ......................................................34

*Piper v. Jenkins*,
　　207 Md. 308 (1955) ..................................................................44

*Plumhoff v. Cent. Mortg. Co.*,
　　286 F. Supp. 3d 699 (D. Md. 2017)...........................................37

*Pocahontas Supreme Coal Co. v. Bethlehem Steel*,
  828 F.2d 211 (4th Cir. 1987) ........................................................29

*Pocono Int'l Raceway v. Pocono Produce, Inc.*,
  503 Pa. 80 (1983)...........................................................................13

*Poffenberger v. Risser*,
  290 Md. 631 (1981) ........................................................................26

*Premier Growth Fund v. Alliance Capital Mgmt.*,
  435 F.3d 396 (3d Cir. 2006) ..........................................................14

*Prince George's v. Longtin*,
  419 Md. 450 (2011) ........................................................................31

*Rich v. Hersl*,
  2021 WL 2589731 (D. Md. June 24, 2021) ...........................*passim*

*Sec'y of State for Defence v. Trimble Navigation Ltd.*,
  484 F.3d 700 (4th Cir. 2007) ........................................................39

*Sira v. Morton*,
  380 F.3d 57 (2d Cir. 2004) ............................................................40

*Six v. Generations Fed. Credit Union*,
  891 F.3d 508 (4th Cir. 2018) ........................................................39

*Smith v. Hogan*,
  794 F.3d 249 (2d Cir. 2015) ..........................................................40

*Tellabs, Inc. v. Makor Issues & Rights Ltd.*,
  551 U.S. 308 (2007)........................................................................17

*Temkin v. Frederick Cnty. Com'rs*,
  945 F.2d 716 (4th Cir. 1991) ........................................................33

*Tengood v. City of Philadelphia*,
  529 F. App'x 204 (3d Cir. 2013).....................................................34

*Tobey v. Chibucos*,
  890 F.3d 634 (7th Cir. 2018) ........................................................33

*United States v. Kubrick*,
  444 U.S. 111 (1979)...............................................................................10, 33

*United States v. Momodu Gondo, et al.*,
  CCB-17-106.....................................................................................16

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
  592 F.3d 954 (9th Cir. 2010) .........................................................14

*Wade v. Vangelakos*,
  2022 WL 16637565 (D. Md. Nov. 2, 2022).....................................10, 11, 20

*Walker v. S.W.I.F.T. SCRL*,
  517 F. Supp. 2d 801 (E.D. Va. 2007) ...........................................40, 41

*Wallace v. Kato*,
  549 U.S. 384 (2007)..........................................................................9, 13

*Weidman v. Exxon Mobil Corp.*,
  776 F.3d 214 (4th Cir. 2015) ..........................................................5

*Windesheim v. Larocca*,
  443 Md. 312 (2015) ........................................................................44

*Witthohn v. Federal Ins. Co.*,
  164 F. App'x 395 (4th Cir. 2006) ..................................................39

**Statutes:**

18 U.S.C. §§ 1961, *et seq*........................................................................7

28 U.S.C. § 1291 ......................................................................................1

28 U.S.C. § 1331 ......................................................................................1

42 U.S.C. § 1983 ....................................................................7, 8, 13, 34

42 U.S.C. § 1985 ................................................................................7, 8

Md. Code Ann., Cts. & Jud. Proc. § 5-101 ......................................8, 9

Md. Code Ann., Cts. & Jud. Proc. § 12-603 .........................................43

**Rules:**

D. Md. L. R. 106.6 ...........................................................................................7

Fed. R. Civ. P. 8 ..........................................................................................6, 38

Fed. R. Civ. P. 8(a) ...............................................................................6, 38, 39

Fed. R. Civ. P. 8(e) .....................................................................................38

Fed. R. Civ. P. 8(e)(1) ...................................................................................39

Fed. R. Civ. P. 10(c) .....................................................................................42

Fed. R. Civ. P. 12(b)(6) .............................................................................6, 17

Fed. R. Civ. P. 41(b) .....................................................................................39

Fed. R. Civ. P. 78(b) .......................................................................................7

Fed. R. Evid. 201(b)(2) ...................................................................................17

**Other Authorities:**

AP News, January 29, 2018 "Ex-detectives testify about force's robberies, extortions" (https://apnews.com/article/police-us-news-ap-top-news-crime-robbery-b09aee2487f44ac5bae790d303659554) ...................................................18

Baltimore Sun, "Seven Baltimore Police officers indicted on federal racketeering charges," March 1, 2017 (https://www.baltimoresun.com/news/crime/bs-md-ci-baltimore-police-indicted-20170301-story.html) ...................................................16

Baltimore Sun, February 12, 2018 "Notable testimony from the Baltimore Police Gun Trace Task Force corruption trial" (https://www.baltimoresun.com/news/crime/bs-md-ci-gun-trace-task-force-gttf-testimony-highlights-20180126-story.html) ......................................19

Baltimore Sun, January 5, 2018 "Baltimore Gun Trace Task Force leader pleads guilty, expresses remorse" (https://www.baltimoresun.com/news/crime/bs-md-ci-jenkins-pleads-guilty-20180105-story.html) ...........................................17

Department of Justice Press Release, August 10, 2016:
https://www.justice.gov/opa/pr/justice-department-announces-findings-investigation-baltimore-police-department .................................................. 14

DOJ Press Release, "Seven Baltimore City Police Officers Arrested for Abusing Power in Federal Racketeering Conspiracy," March 1, 2017 (https://www.justice.gov/usao-md/pr/seven-baltimore-city-police-officers-arrested-abusing-power-federal-racketeering).................................................. 15-16

DOJ Press Release, January 5, 2018 "Former Baltimore City Sergeant Pleads Guilty To Racketeering, Robberies, Overtime Fraud And Planting Evidence" (https://www.justice.gov/usao-md/pr/former-baltimore-city-sergeant-pleads-guilty-racketeering-robberies-overtime-fraud-and) ......................16

Independent, February 1, 2018 "Baltimore police officers 'carried BB guns to plant on unarmed suspects they shot', court hears" (https://www.independent.co.uk/news/world/americas/baltimore-police-carried-bb-guns-plant-unarmed-suspects-shooting-victims-corruption-maurice-ward-a8189731.html) .................................................. 19

NBC News, March 1, 2017 "Seven Baltimore Cops Indicted on Federal Racketeering Charges" (https://www.nbcnews.com/news/us-news/seven-baltimore-cops-indicted-federal-racketeering-n727716)..........................................16

"Steptoe Report," also referred to as the "Bromwich Report", entitled "Anatomy of the Gun Trace Task Force Scandal: Its Origins, Causes, and Consequences." released in January 2022 by Steptoe & Johnson LLP .......................................42

USA Today, January 29, 2018 "Ex-Baltimore detectives testify about force's robberies, illegal activities" (https://www.usatoday.com/story/news/nation/2018/01/29/baltimore-police-department-robberies-illegal-activities-testimony/1077454001/) ..........................................................................18

Vox, February 13, 2018 "8 cops allegedly used an elite Baltimore police team to plunder the city and its residents" (https://www.vox.com/policy-and-politics/2018/2/2/16961146/baltimore-gun-trace-task-force-trial) ........................... 19

WBAL – NBC, January 5, 2018 "New details emerge about gun squad as former officer pleads guilty" (https://www.wbaltv.com/article/former-officer-pleads-guilty-in-corruption-case-i-am-ashamed-of-myself/14760866#) ....................................................................................17

WMAR-ABC, "7 Baltimore Police officers indicted in racketeering conspiracy," March 1, 2017 (https://www.wmar2news.com/news/crime-checker/baltimore-city-crime/live-7-baltimore-police-officers-indicted-in-racketeering-conspiracy)..........................................................................16

WYPR, "*City Spending Board Approves 30th Gun Trace Task Force Settlement*," July 21, 2021 (https://www.wypr.org/wypr-news/2021-07-21/city-spending-board-approves-30th-gun-trace-task-force-settlement)................5

# JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction over Appellant Demetric Simon's claims of federal constitutional violations pursuant to 28 U.S.C. § 1331. On March 18, 2023, the district court issued final judgment, entered on March 20, 2023, dismissing all of Simon's claims as time-barred, such that this Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291. Appellant Simon noted his appeal on April 18, 2023.

# STATEMENT OF THE ISSUES[1]

**Issue One** – Whether the district court properly granted Appellees' Motions to Dismiss.

**Issue Two** – Whether the district court properly declined to consider the lengthy materials referenced in the Complaint by hyperlink alone.

**Issue Three** – Whether this Court should decline to certify the issues of "Equitable Tolling" of the Statute of Limitations and "Fraudulent Concealment" to the Maryland Supreme Court.

---

[1] Appellant's appeal is limited to issues surrounding the statute of limitations and the materials referenced in the Amended Complaint via hyperlink. Appellant Br. 1-3. The district court dismissed Counts IV-VII against Appellee Baltimore Police Department ("BPD") on the basis of sovereign immunity. JA698 ("The BPD Motion will be granted as to BPD on Counts IV through VII on the basis of sovereign immunity"). Appellant did not appeal or otherwise challenge the district court's dismissal of Counts IV-VII against the BPD.

## INTRODUCTION

On March 26, 2014, Appellant Simon was arrested and subsequently charged with crimes related to possession of a firearm. His criminal charges were dismissed on January 16, 2015, and he was subsequently released from incarceration on February 5, 2015. Thus, the criminal proceedings against Simon were favorably terminated no later than February 5, 2015.

On March 7, 2022, Simon filed the underlying Complaint in this matter, followed by an Amended Complaint, against BPD and former BPD Officers Keith Gladstone, Robert Hankard, Wayne Jenkins, Carmine Vignola, Benjamin Frieman, Ryan Guinn, and Dean Palmere. All defendants moved to dismiss the Amended Complaint because the entirety of Simon's claims are barred by the relevant statutes of limitations. On March 22, 2023, the district court granted Appellees' Motions, dismissing Appellant's claims at time-barred. Simon timely noted his appeal. But, this Court should affirm the district court's ruling and affirm the dismissal with prejudice of Appellant's claims as they are all barred by the relevant statutes of limitations.

## STATEMENT OF THE CASE

The district court accurately summarized and laid out the facts of this case as follows:

> On March 7, 2022, Plaintiff filed a Complaint against Defendants arising out of his 2014 arrest, subsequent charges and detainment. (ECF No. 1.) Plaintiff filed an Amended Complaint on May 31, 2022. (ECF No. 11; the "Complaint.") At all times relevant to the Complaint, each

of the individual Defendants was a BPD officer and member of its notorious Gun Trace Task Force ("GTTF"). Plaintiff alleges that on March 26, 2014, the individual officer Defendants pursued Plaintiff without probable cause; planted a "realistic-looking BB-gun" on the scene to justify the pursuit; and authored and submitted a false statement of probable cause. (ECF No. 11, ¶¶ 26-27, 29, 32 and 35.) Based on these bad acts, Plaintiff was taken into custody, and falsely charged with various criminal offenses, which resulted and formed the basis of violation of probation ("VOP") charges brought against Plaintiff due to his criminal history. *Id.* ¶¶ 29, 35. All charges related to the 2014 arrest were disposed of by *nolle prosequi* on January 16, 2015; Plaintiff remained in custody until the VOP charges were dismissed on February 5, 2015. *Id.*

JA689.

## SUMMARY OF THE ARGUMENT

The district court properly granted the Appellees' Motions to Dismiss Simon's Amended Complaint because Simon failed to file his initial Complaint within the relevant statutes of limitations. Simon failed to allege any facts which would have tolled the statutes of limitations, nor did he allege in any way that he made any efforts to reasonably investigate his claims before the limitations periods expired or otherwise show that he exercised any due diligence towards his own claims. Because Simon failed to exercise even the slightest diligence toward his claims, neither the doctrine of equitable tolling or fraudulent concealment apply to his claims. Therefore, even if Simon sufficiently raised and preserved the issues of equitable tolling or fraudulent concealment at the district court level (to be clear, he did not), there is no need to certify questions as to those doctrines to the Supreme

Court of Maryland because the existing case law establishes that Simon's lack of diligence forecloses his ability to invoke the tolling doctrines.

The district court also used proper discretion when it declined to undertake an independent review of the more than 1,100 pages of documents and a 92-minute video that Simon attempted to incorporate into his Amended Complaint via hyperlink alone. Simon could have asserted and cited any relevant facts or excerpts from the materials within his pleading, directing the Appellees and the district court to the facts that he believed supported his claims. However, Simon elected only to include a hyperlink to the materials, hoping that the Appellees and the district court would sort through the materials on their own to determine if sufficient facts existed therein.

Because Simon filed his Complaint well after the statutes of limitations expired, and because he failed to conduct any investigation or show any due diligence regarding his legal rights prior to the limitations period expiring, the district court was correct in dismissing Simon's claims as time-barred.

## **ARGUMENT**

## I. **THE DISTRICT COURT PROPERLY GRANTED APPELLEES' MOTIONS TO DISMISS.**

On March 7, 2022, Appellant Simon filed the instant action, after he and his counsel watched for multiple years as other alleged victims of the Gun Trace Task

Force ("GTTF") filed lawsuits relating to events much more recent in time.[2] Simon's Amended Complaint was filed more than two years after the last relevant statute of limitations expired. Accordingly, it was proper for the district court to grant Appellees' Motions to Dismiss, thereby dismissing Simon's Amended Complaint with prejudice and without leave to amend.

### a. STANDARD OF REVIEW.

This Court "review[s] a grant of a motion to dismiss for failure to state a claim de novo." *Chambers v. N. Carolina Dep't of Justice*, 66 F.4th 139, 141 (4th Cir. 2023) (citing *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 219 (4th Cir. 2015)). "Likewise, '[w]e review the district court's statute-of-limitations decision de novo.'" *Id.* (citing *Parkway 1046, LLC v. U.S. Home Corp.*, 961 F.3d 301, 307 (4th Cir. 2020)).

"This Court reviews a motion to dismiss de novo." *ACA Fin. Guar. Corp. v. City of Buena Vista, Virginia*, 917 F.3d 206, 211 (4th Cir. 2019) (citing *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009)). This court also "review[s] the district court's statute-of-limitations decision de novo." *Chambers*, 66 F.4th at 141 (citing *Parkway 1046*, 961 F.3d at 307).

---

[2] WYPR, "*City Spending Board Approves 30th Gun Trace Task Force Settlement*," July 21, 2021 (https://www.wypr.org/wypr-news/2021-07-21/city-spending-board-approves-30th-gun-trace-task-force-settlement) (last accessed September 22, 2023).

In so doing, the Court follows the well-settled standard for considering a motion to dismiss under Rule 12(b)(6). *ACA Fin. Guar. Corp.*, 917 F.3d at 211.

> A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the claims pled in a complaint. To sufficiently plead a claim, the Federal Rules of Civil Procedure require that "[a] pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief ...." Fed. R. Civ. P. 8(a). This pleading standard does not require detailed factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). However, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. Labels, conclusions, recitation of a claim's elements, and naked assertions devoid of further factual enhancement will not suffice to meet the Rule 8 pleading standard. *Id*.

> To meet the Rule 8 standard and survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). To contain sufficient factual matter to make a claim plausible, the factual content must "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

> While we must accept the factual allegations in the complaint as true, we need not accept a complaint's legal conclusions. *Id*. Thus, simply reciting the cause of actions' elements and supporting them by conclusory statements does not meet the required standard. *Id*. The Supreme Court noted that while Rule 8 departed from the hypertechnical code-pleading requirement of a prior era, it did not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 678–679, 129 S. Ct. 1937.

*ACA Fin. Guar. Corp.*, 917 F.3d at 211–12.

### b. THE DISTRICT COURT PROPERLY HELD THAT APPELLANT'S CLAIMS ARE ALL BARRED BY THE RELEVANT STATUTES OF LIMITATIONS.[3]

Simon's Complaint asserted claims falling under three distinct statutes of limitations: (1) those that arose on the date of incident, March 26, 2014 and/or the date of his release, February 5, 2015; (2) Plaintiff's *Monell*[4] claims; and (3) Appellant's RICO claims.[5, 6] In each situation, Simon failed to timely file his claims

---

[3] Simon takes exception to the district court's decision to rule on the submitted motions and memoranda, rather than holding a hearing, "despite request, and the unusual circumstances of the case." Appellant Br. at 12. Both the federal and local rules authorize the court to rule without a hearing. *See* FRCP 78(b); *see also* D. Md. L. R. 106.6. Simon offers no argument or explanation as to how the district court abused its discretion in electing to rule on the written submissions alone. Therefore, the district court's decision to rule on the Appellant's Motions to Dismiss, without holding a hearing, should be affirmed.

[4] A "§ 1983 *Monell* claim" refers to the well-established Supreme Court precedent authorizing civil rights lawsuits under § 1983 against municipalities, where an official policy or custom of the municipality causes a constitutional injury. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

[5] Simon alleged violations of the Civil Racketeer Influenced and Corrupt Organizations Act (Civil RICO) and Conspiracy to Violate Civil RICO, 18 U.S.C. §§ 1961, *et seq.*, in Count IX of the Amended Complaint. JA56-58.

[6] The district court noted, as to the statutes of limitations for the various types of claims asserted within Simon's Amended Complaint that:

> According to the titles of Counts I and II, each of these counts purports to state no fewer than 18 separate "causes of action" under sections 1983 and 1985, respectively, as against all Defendants, with the exception of Plaintiff's *Monell* claim, which "Only Applies to Defendant Baltimore City Police Department." [JA42, JA48]. For purposes of resolving the timeliness challenge, the court need not

before the appropriate statute of limitations expired.  Further, there is no basis to toll Appellant's claims.

"It is well-settled that sections 1983 and 1985 borrow the state's general personal injury limitations period."  JA699 (quoting *Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 187 (4th Cir. 1999)).  In Maryland "[a] civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced."  *Id*. (citing MD. CODE ANN., CTS. & JUD. PROC. § 5-101).  Accordingly, Appellant's constitutional claims are subject to a three-year statute of limitations.

Without question, Simon's claims are barred as a matter of law.  Appellant's criminal proceedings resolved in his favor on February 5, 2015, when the State dismissed all remaining charges against him, related to the relevant events in this matter, and he was released.  JA35-37 ¶¶ 29, 35.  Therefore, because he did not bring

---

undertake analysis of whether the Complaint adequately states each of the constitutional claims listed in the titles to Counts I and II; nor does the court need to identify and recite the elements of each identified cause of action. Rather, as all claims asserted under sections 1983 and 1985 are subject to Maryland's 3-year limitations period, the court will evaluate the limitations challenge based on the well-pled factual allegations of the Complaint that, in turn, form the basis for all claims asserted through Counts I and II.

JA699, at 12, n.11.

suit until March 7, 2022, more than seven (7) years after the favorable termination of his criminal cases, this Court must affirm the district court's ruling that dismissed all claims with prejudice.

All of Simon's claims, except for those in Count VIII (RICO), are barred by Maryland's three-year statute of limitations. Md. Code Ann., Cts. & Jud. Proc. § 5-101. "The statute of limitations on private civil RICO claims is four years, beginning on the date the plaintiff 'discovered, or should have discovered, the injury.'" *CVLR Performance Horses, Inc. v. Wynne*, 792 F.3d 469, 476 (4th Cir. 2015).

Appellant knew, at the time of his arrest, that he did not possess a weapon when he was chased by Appellee former BPD officer Wayne Jenkins on March 26, 2014, and was subsequently arrested. The fact that he did not know the identities of each potential defendant involved, or the details as to how the gun was planted, does not change the fact that he knew, at the time his criminal proceedings terminated in his favor, what the alleged basis for his arrest was – possession of a gun that he alleges he did not possess – and the name of the officers who arrested him and wrote the statement of probable cause asserting that he was in possession of a firearm. *See Rich v. Hersl*, 2021 WL 2589731, at *11 (D. Md. June 24, 2021).

A claim accrues when the plaintiff *knows or has reason to know* of the injury which is the basis of the action. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). The date of accrual occurs "when a plaintiff possesses sufficient facts about the harm

done to him that reasonable inquiry will reveal his cause of action." *Nasim v. Warden*, 64 F.3d 951, 955 (4th Cir. 1995) (citing *United States v. Kubrick*, 444 U.S. 111, 122-24 (1979)). "Put simply, the statute of limitations begins to run when the plaintiff should know of a potential claim against another person, not when the plaintiff develops a full-blown theory of recovery." *Wade v. Vangelakos*, 2022 WL 16637565, at \*2 (D. Md. Nov. 2, 2022) (citing *Lumsden v. Design Tech Builders Inc.*, 749 A.2d 796, 802 (Md. 2000)). Accordingly, the statute of limitations as to Simon's claims began to run, at the latest, when he was released from custody in 2015, because even then he knew that he was allegedly not in possession of the gun that the officers said they found on him.

### i. APPELLEES CITED VOLUMINOUS INFORMATION TO ESTABLISH APPELLANT WAS ON REASONABLE INQUIRY NOTICE OF HIS POTENTIAL CLAIMS PRIOR TO MARCH 6, 2018.

In order for Appellant's March 7, 2022 Complaint, and subsequent First Amended Complaint, to be timely, he must not have been aware of even a single cause of action against a single Defendant prior to March 6, 2019 or, with respect to his RICO claims, March 6, 2018. However, even Appellant acknowledges that he could have filed a civil rights case against at least Jenkins at a time earlier than his Complaint was filed in 2022. *See* Appellant Br. at 28 ("Assuming arguendo Appellant sued for civil rights violations, it would have been speculative at best and Simon could only sue Appellee Wayne Jenkins."). Unfortunately for Simon, "the

statute of limitations does not wait for a plaintiff to build a perfect theory of recovery." *Wade*, 2022 WL 16637565, at *2. Rather, once a plaintiff has enough information to know that the a wrong has been committed against him, the clock begins to run.

### 1.    Pre-incident lawsuits and allegations of misconduct.

Even prior to Appellant's March 26, 2014 arrest, there were questions, as well as lawsuits, addressing both Wayne Jenkin's conduct as a BPD Officer, but also as to the wider police practices of the BPD.  *See* JA120-121.  Multiple lawsuits were filed against Jenkins, prior to 2014, alleging he engaged in unconstitutional stops and arrests without probable cause.  *Id*.; *see also* JA149-158, JA159-176.  In 2006, several individual plaintiffs, as well as the NAACP, filed suit against the BPD and City for "engag[ing] in a systematic practice of arresting individuals without probable cause."  *Id*.; *see also Maryland State Conference of NAACP Branches v. Baltimore City Police Dept*., No. CIV CCB-06-1863, 2006 WL 3626898, at *1 (D. Md. Dec. 1, 2006).

This, of course, by no means suggests that Simon could have filed suit *before* the alleged misconduct against *him*.  Rather, it goes to show that Simon's current contention, that his own knowledge of the alleged misconduct against him was insufficient without knowledge of wider accusations of misconduct, has no basis in either law or fact.

### 2. Appellant's 2014 arrest and 2015 dismissal of charges and release.

Appellant's criminal charges stemming from his March 26, 2014 arrest were dismissed by entry of a *nolle prosequi* on January 16, 2015. JA35, ¶ 29. The residual Violation of Probation charges were also dismissed and Simon was released from incarceration, approximately 3 weeks later, on February 5, 2015. *Id*. ¶¶ 29, 35. Simon knew at the time of his arrest or at the latest when he was served with his statement of charges relating to his arrest, that the gun he was accused of possessing was not his. In *Rich*, the Plaintiff alleged that the arresting officer planted a gun on him to justify his arrest and ultimately led to his conviction. 2021 WL 2589731, at *11. A period of eight (8) months elapsed between Rich's arrest and the dismissal of his charges and his release. *Id*. Judge Hollander stated:

> Regardless of when exactly during that eight-month period the cause of action for false arrest and imprisonment accrued, plaintiff clearly was aware of the non-consensual deprivation of his liberty at all relevant times. Thus, the three-year limitations clock began to run no later than June 2008. Plaintiff filed suit in 2020, well over three years after the end of the limitations period.

*Id*.; *see also Lloyd v. Ocean Twp. Counsel*, 2021 WL 1608553 (3d Cir. Apr. 26, 2021) (finding plaintiff's malicious prosecution and fabrication of evidence claims accrued when the criminal proceedings against plaintiff were dismissed and finding plaintiff had failed to establish sufficient basis for equitable tolling).

In *Lomax v. Police Chief of Erie*, 452 Fed. Appx. 83, 84 (3d Cir. 2011), the court analyzed a similar scenario. Lomax alleged that on July 5, 2007, he was visiting a friend's house when officers broke into the home, pointed weapons at him and his friends, attempted to plant drugs on him, and then charged him with drug possession and related charges. *Id.* A jury acquitted Lomax of all charges on April 11, 2008. *Id.* In September 2010, after the expiration of Pennsylvania's two-year statute of limitations, Lomax filed a federal § 1983 lawsuit against the police department and individual officers. *Id.* The Third Circuit affirmed dismissal of the complaint as time-barred, finding that "[t]he alleged constitutional violations that Lomax incurred occurred between July 5, 2007, the date of his arrest, and April 17, 2008, when the charges brought against him in Erie County were dismissed." *Id.*, citing *Wallace*, 549 U.S. at 389–90. Lomax argued that the limitations period should be equitably tolled. *Id.* However, the court determined "Lomax has not established that tolling is justified. Although Lomax contended that he was 'only recently made aware of the fact that his constitutional rights were violated,' he has not demonstrated that he exercised due diligence." *Id.*, at 85 (citing *Pocono Int'l Raceway v. Pocono Produce, Inc.,* 503 Pa. 80, 85 (1983)).

Here, Simon's was arrested on March 26, 2014 and remained incarcerated until February 5, 2015 when all of his charges were dismissed. JA35-37, ¶¶ 29, 35. Accordingly, Appellant's three-year limitations clock began to run no later than

February 2015.  Thus, Appellant's March 7, 2022 initial Complaint was filed at least four (4) years after the expiration of the limitations period.  Simon asserts no facts or argument to justify a tolling of the limitations period in this case.

### 3. August 10, 2016 U.S. Department of Justice Report.

On August 10, 2016, the United States Department of Justice ("DOJ") issued a report titled "Investigation Of The Baltimore City Police Department," which concluded the BPD had engaged in an unconstitutional pattern or practice of conduct over a period of years." [7, 8] *See also* JA122.  As the district court in *Rich* noted:

> The report presented various conclusions about deficiencies in BPD operations. DOJ determined that "there is reasonable cause to believe that BPD engages in a pattern or practice of conduct that violates the Constitution or federal law," and that this pattern or practice produces "unjustified disparities" in the rates of African Americans subject to stops, searches, and arrests by police. ECF 17, ¶ 68 (quoting ECF 17-9 at 4). As to the BPD, DOJ also found that inadequate training, deficient

---

[7]  Department of Justice Press Release, August 10, 2016: https://www.justice.gov/opa/pr/justice-department-announces-findings-investigation-baltimore-police-department (Last accessed on September 27, 2023).

[8]  The Court may take judicial notice of publications introduced to "indicate what was in the public realm at the time, not whether the contents of those articles were in fact true." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (citing *Premier Growth Fund v. Alliance Capital Mgmt.*, 435 F.3d 396, 401 n. 15 (3d Cir. 2006)). District courts in this circuit "routinely take judicial notice of newspaper articles, analysts' reports, and press releases in order to assess what the market knew at particular points in time, even where the materials were not specifically referenced in the complaint." *In re Human Genome Scis. Inc. Sec. Litig.*, 933 F. Supp. 2d 751, 758, 2013 WL 1223344 (D. Md. 2013) (citing *Johnson v. Pozen Inc.*, No. 7–599, 2009 WL 426235, at *2 (M.D.N.C. Feb. 19, 2009)); *see also In re Inspire Pharms., Inc. Sec. Litig.*, 515 F. Supp. 2d 631, 637 (M.D.N.C. 2007)).

> supervision of enforcement operations, and a "failure to hold officers
> accountable for misconduct" contributed to a pattern of
> unconstitutional policing. ECF 17, ¶ 72; *See id*. 70, 71.

*Rich*, 2021 WL 2589731, at *5. Thus, the 2016 DOJ report provided the public –
including Simon and his counsel – with widespread public knowledge of problems
within the BPD regarding unconstitutional policing. This publicly disseminated
information added to Simon's existing knowledge that he had been arrested and
charged with illegal possession of a firearm he asserts he did not possess.

Therefore, even if there were some widespread public-knowledge requirement
to a statute of limitations running, above and beyond the plaintiff himself needing to
know that the wrong was done to him (to be clear, there is no such additional
requirement), the report issued by the Department of Justice in 2016 would surely
satisfy it, and Simon's 2022 lawsuit would still be time-barred.

### 4. February 23, 2017 GTTF Indictments.

On February 23, 2017, a federal grand jury indicted seven BPD officers
assigned to the Gun Trace Task Force ("GTTF"), including Wayne Jenkins, the very
officer who chased and struck Simon with his vehicle on March 26, 2014, when
Simon was arrested. JA123; *see also* DOJ Press Release, "Seven Baltimore City
Police Officers Arrested for Abusing Power in Federal Racketeering Conspiracy,"
March 1, 2017 (https://www.justice.gov/usao-md/pr/seven-baltimore-city-police-
officers-arrested-abusing-power-federal-racketeering) (last accessed September 27,

2023); *United States v. Momodu Gondo, et al.*, CCB-17-106, ECF 1 (Indictment); ECF 137 (Superseding Indictment). The indictments of Jenkins and his fellow GTTF officers were widely publicized across numerous media outlets approximately one (1) week later on March 1, 2017.[9] Thus, the widely reported 2017 indictment of at least one of the former officers that had allegedly wronged Simon made it abundantly clear that Simon was on inquiry notice of his potential claim.

### 5. January 5, 2018 – Jenkins' Guilty Plea Hearing.

On January 5, 2018, Wayne Jenkins pled guilty to multiple charges including racketeering, robbery, and planting evidence. JA124-125; *see also* DOJ Press Release, January 5, 2018 "Former Baltimore City Sergeant Pleads Guilty To Racketeering, Robberies, Overtime Fraud And Planting Evidence" (https://www.justice.gov/usao-md/pr/former-baltimore-city-sergeant-pleads-guilty-racketeering-robberies-overtime-fraud-and) (last accessed on September 27, 2023).

---

[9] Baltimore Sun, "Seven Baltimore Police officers indicted on federal racketeering charges," March 1, 2017 (https://www.baltimoresun.com/news/crime/bs-md-ci-baltimore-police-indicted-20170301-story.html) (last accessed September 27, 2023); WMAR-ABC, "7 Baltimore Police officers indicted in racketeering conspiracy," March 1, 2017 (https://www.wmar2news.com/news/crime-checker/baltimore-city-crime/live-7-baltimore-police-officers-indicted-in-racketeering-conspiracy) (last accessed September 27, 2023); NBC News, March 1, 2017 "Seven Baltimore Cops Indicted on Federal Racketeering Charges" (https://www.nbcnews.com/news/us-news/seven-baltimore-cops-indicted-federal-racketeering-n727716) (last accessed September 27, 2023).

During the guilty plea hearing (with respect to a separate 2010 arrest), Jenkins' attorney stated on the record that Jenkins was aware that drugs had been planted and that Jenkins authored a false report related to that evidence. JA125; *see also* JA177 (excerpt from Jenkins' Jan. 5, 2018 plea hearing transcript excerpt).[10] Jenkins' plea itself, and the contents of his plea agreement were widely reported in numerous media outlets.[11] Even if the indictment were not enough, Jenkins' guilty plea in January 2018 to the exact type of criminal behavior that Simon alleges occurred in 2014 eviscerates any assertion that Simon's notice was insufficient.

---

[10] "In reviewing a Rule 12(b)(6) dismissal, we may properly take judicial notice of matters of public record." *Philips v. Pitts County Memorial Hospital*, 572 F.3d 176, 180 (4th Cir. 2009). "[T]he most frequent use of judicial notice of ascertainable facts is in noticing the content of court records." *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) (citations omitted); *See also Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 322 (2007); *Drubetskoy v. Wells Fargo Bank, N.A.*, 2013 WL 6839508, at *2 (D. Md. Dec. 20, 2013) (taking judicial notice of plea agreement evidencing the plaintiff's criminal conviction, because it "is a matter of public record, as it was filed in open court"); *Dewitt v. Ritz*, No. CV DKC 18-3202, 2021 WL 915146, at *7 (D. Md. Mar. 10, 2021) (stating transcripts of post-conviction hearing are certified by the court reporter and presumably qualify for judicial notice as court records.); Fed. R. Evid. 201(b)(2).

[11] Baltimore Sun, January 5, 2018 "Baltimore Gun Trace Task Force leader pleads guilty, expresses remorse" (https://www.baltimoresun.com/news/crime/bs-md-ci-jenkins-pleads-guilty-20180105-story.html) (last accessed September 27, 2023); WBAL – NBC, January 5, 2018 "New details emerge about gun squad as former officer pleads guilty" (https://www.wbaltv.com/article/former-officer-pleads-guilty-in-corruption-case-i-am-ashamed-of-myself/14760866#) (last accessed September 27, 2023).

### 6. January 23 & 29, 2018 - Trial Testimony of Evodio Hendrix and Maurice Ward.

On January 23, 2018, former Officer Maurice Ward testified in the trial of former Officers Daniel Hersl and Marcus Taylor. JA125-126; *see also* JA180-186 (Jan. 23, 2018 Ward transcript excerpt). On January 29, 2018, former Officer Evodio Hendrix testified in the same trial. *Id., see also* JA187-189 (Jan. 29, 2018 Hendrix transcript excerpt). Both Ward and Hendrix testified that Jenkins suggested his subordinates keep a BB gun or air pistol with them to plant on suspects if needed. *Id*. Ward testified that Jenkins told him and other officers to carry the BB guns "in case we ever, like, accidentally hit somebody or got into a shootout and they didn't have a gun on 'em, so we could plant that BB gun or air pistol on 'em to make it seem like we thought they had a gun." JA181, lines 6-10. Hendrix testified that Jenkins told him to carry a BB gun "to protect yourself if something was to occur … where you hurt someone and you need to cover yourself, it's easy to put the BB gun down as if they had a handgun." JA184, lines 1-6. The testimony of these officers was widely and immediately publicized across numerous media outlets the same day.[12] Notably, and directly related to Plaintiff's allegations, several media outlets

---

[12] AP News, January 29, 2018 "Ex-detectives testify about force's robberies, extortions" (https://apnews.com/article/police-us-news-ap-top-news-crime-robbery-b09aee2487f44ac5bae790d303659554) (last accessed April 12, 2022); USA Today, January 29, 2018 "Ex-Baltimore detectives testify about force's robberies, illegal activities" (https://www.usatoday.com/story/news/nation/2018/01/29/baltimore-police-department-robberies-illegal-activities-testimony/1077454001/) (last accessed April 12, 2022).

specifically reported that Hendrix and Ward both testified that Jenkins told them to keep BB-guns in their vehicles "in case we accidentally hit somebody or got into a shootout, so we could plant them."[13] Thus, in January 2018, more than four years before Simon filed suit, there was widely reported sworn testimony from multiple former officers that Jenkins – the former officer that Simon alleges planted a BB-gun on him – routinely told his fellow officers to plant BB-guns on people, yet Simon asserts he still did not have notice of his potential claim against him. The standard, it is worth repeating, only requires that Simon know he had himself been wronged, but there can be no doubt that he was fully aware of the wider allegations against Jenkins in January 2018 as well.

---

[13] Independent, February 1, 2018 "Baltimore police officers 'carried BB guns to plant on unarmed suspects they shot", court hears" (https://www.independent.co.uk/news/world/americas/baltimore-police-carried-bb-guns-plant-unarmed-suspects-shooting-victims-corruption-maurice-ward-a8189731.html) (last accessed September 27, 2023)("Members of Baltimore Police Department's Gun Trace Task Force, an elite squad with responsibility for taking illegal firearms off the city's streets, kept replica weapons in their cars in case they "accidentally hit somebody," a former detective told a court."); Baltimore Sun, February 12, 2018 "Notable testimony from the Baltimore Police Gun Trace Task Force corruption trial" (https://www.baltimoresun.com/news/crime/bs-md-ci-gun-trace-task-force-gttf-testimony-highlights-20180126-story.html) (last accessed September 27, 2023)(""Ward said the officers kept BB guns in their vehicles 'in case we accidentally hit somebody or got into a shootout, so we could plant them.'"); Vox, February 13, 2018 "8 cops allegedly used an elite Baltimore police team to plunder the city and its residents" (https://www.vox.com/policy-and-politics/2018/2/2/16961146/baltimore-gun-trace-task-force-trial) (last accessed September 27, 2023) ("One officer said the unit carried BB guns "in case we accidentally hit somebody or got into a shootout, so we could plant them.").

### ii.    THE 2019 AND 2020 RELEASES OF GLADSTONE AND HANKARD'S INDICTMENTS ARE IRRELEVANT.

In his Amended Complaint, Simon asserts that "[u]ntil the U.S. Attorney's Office revealed the Gladstone and Hankard Indictments, Plaintiff Simon did not know and could not have known the <u>full extent of when, how, and why he was injured</u> as described herein, as well as begin to know those responsible for the same injuries."   JA39, ¶ 40 (emphasis added).   However, the accrual of the statute of limitations does not begin when a Plaintiff has actual knowledge of the "full extent of when, how, and why he was injured."   The accrual begins when the Plaintiff "knows or has reason to know of his injury." *Owens v. Balt. City State's Attorneys' Office*, 767 F.3d 379, 389 (4th Cir. 2014).

While the information contained within the indictment unsealed on March 6, 2019, may be helpful to more fully establishing Simon's claims, the limitations period ran when his charges were dismissed and he was released on February 5, 2015.  *See Wade*, 2022 WL 16637565, at *2 ("While video footage could have helped [Plaintiff] identify her specific assailants, the limitations period starts upon 'the discovery of an injury and its general cause, not the exact cause in fact and the specific parties responsible.'") (quoting *Lumsden*, 749 A.2d at 804).  The statute of limitations begins to run when the plaintiff has the basic knowledge that the wrong has occurred, not when all details of the wrong have been fleshed out in public proceedings such that they are now extraordinarily easy to prove.

Maryland law specifically states that "knowledge of the identity of a particular defendant is not a necessary element to trigger the running of the statute of limitations." *Conaway v. State*, 90 Md. App 234, 253 (1992). Indeed, in its opinion dismissing Simon's case, the district court specifically (and properly) noted that "[k]nowledge that BPD officers were responsible for his harms … provided [Simon] ample notice of the identity of the wrongdoers such that he was on notice to investigate and pursue his claims well before the indictments were publicized and well before his claims were time barred." JA700, n.12; *see also Gross v. Hopkins*, 2021 WL 978822, *4 (D. Md. March 15, 2021); *Estate of Knight*, 182 F.3d 908, 1999 WL 390987, *3-*4 (4th Cir. 1999). Just because additional information about a plaintiff's potential claim becomes widely publicized after a statute of limitations has run, that does not make earlier information insufficient to trigger the running, and the case was therefore properly dismissed.

### iii. APPELLANT'S RELIANCE ON *GREENE V. PRO FOOTBALL, INC.* IS MISPLACED.

It is somewhat ironic that Simon bases his entire appellate argument as to the statute of limitations on the holding in *Green v. Pro Football, Inc.*, 31 F. Supp. 3d 714 (2014), when he derided the district court for having "apparently relied on the non-precedential *Rich v. Hersl*, 2021 WL 2589731 (D. Ct. 2021)" (sic). *Compare* Appellant Br. at 12, *with id.* at 21-22, 21-32, 36. While both opinions are from the trial court level, and thus neither are precedential, the reasoning behind the decisions

and the factual scenarios are highly distinguishable, showing that while the *Rich* opinion is relevant, the opinion in *Green* is not.

The factual situations between the instant case and the *Rich* case are nearly identical, in terms of not only the claims but also the participants. Both Simon and Rich were arrested by BPD officers assigned to the Gun Trace Task Force, after which they were both charged with possessing handguns that they both allege were planted on them at the scenes of their arrest. Both filed claims after their statutes of limitations expired, and in both cases, the trial court found that their claims began to accrue – at the latest – at the time their criminal charges related to the firearm possession were dismissed and they were released from imprisonment.

In contrast, the plaintiff in *Green* was a professional football player who was injured in an on-field injury in 2004, when he was hit by a member of the opposing team during a play, causing a career ending injury. *Green*, 31 F. Supp. 3d at 718–19. Immediately after the hit, Green was suspicious that the hit was intentional and spoke to the media and his coach about his suspicions. *Id*., at 719. Green's coach told him that "it was not possible that the injury was intentional," and Green stated that "he relied on [the coach's] statement, believing that an investigation had been, or would be made." *Id*. "It was not until March 3, 2012, when the *Washington Post* published an article [alleging the existence of a bounty program], that Green became aware of the program." *Id*.

The district court in Green held that the statute of limitations was tolled due to the discovery rule because "[t]he discovery that Royal's hit was conceivably legally actionable was first raised by outside events, i.e., by the news articles disclosing the alleged bounty program." *Id*. at 724. In the instant case, even Simon admits that he conceivably had a potential cause of action against Appellee Jenkins, well before the 2019 unsealing of Gladstone's indictment. *See* Appellant Br. at 28. At a minimum, Simon knew he was arrested by BPD officers, he had the name of the arresting officer, and he could have filed suit, sought discovery, including depositions of Jenkins and any other persons known to be involved in his arrest, and developed a more complete factual record during the limitations period. If Simon had engaged in a reasonable investigation, which was proven insufficient due to fraud or deceit by a defendant, then Simon may have had a claim for fraudulent concealment. However, that did not happen. As Simon does not allege he engaged in *any* investigation prior to the expiration of his limitations period, the fraudulent concealment doctrine does not apply to the instant case.

It should be noted that in *Green*, while several claims were permitted to survive the Motion to Dismiss stage, based on claims which could not have been discovered until the bounty program came to light, those claims that were apparent at the time of the 2004 injury were all dismissed with prejudice as time-barred. *Green*, 31 F. Supp. 3d at 725 ("dismiss[ing] with prejudice any and all claims based

on negligence, gross negligence (and malice), as well as battery not tied to the existence of the bounty program" as they "would have been immediately apparent as of 2004.").

Here, Simon alleges that he was not in possession of a firearm at the time that that Jenkins struck him with the vehicle on March 26, 2014. Simon also alleges that he was subsequently arrested and charged with possession of a firearm on that date. Therefore, if Simon was not in possession of a firearm when he was arrested, then as soon as those criminal charges were dismissed, and Simon was released from incarceration on February 5, 2015, it would have been immediately apparent that he had been arrested and prosecuted for reasons that were illegal or based on improper motives. *See* JA706 ("[Simon's] release date is the latest possible date on which he had actual notice and knowledge that a criminal proceeding had been instituted against him without probable cause (*i.e.* the harm that put him on notice to investigate further as to the existence of a claim).").

Green, as a football player, reasonably expected to engage in bodily contact with other players on the field at the time of his injury in 2004, but had no reason to suspect any unlawful conduct was involved until the bounty program came to light in 2012. On the other hand, if Simon was not in possession of a firearm in 2014, once he was arrested and criminally charged with possessing a firearm, and those criminal charges were dismissed, Simon had clear knowledge that his rights had

been allegedly violated. At that point, Simon was on inquiry notice, it was his responsibility to investigate whether he had a valid cause of action, and the statute of limitations began to run in 2015.

        **c.**    **APPELLANT'S CLAIMS ARE NOT SAVED BY THE DOCTRINES OF EQUITABLE TOLLING OR FRAUDULENT CONCEALMENT.**

The doctrines of equitable tolling and fraudulent concealment exist in Maryland to protect the rights of a diligent plaintiff who, despite his efforts to comply with the law, could not have learned of his claim prior to the expiration of the relevant statutes of limitations. *See Dual Inc. v. Lockheed Martin Corp.*, 383 Md. 151, 172 (2004) ("[F]raudulent concealment requires that the complaint articulate how the plaintiff learned of the fraud, and why a diligent plaintiff could not discover it sooner.") (citing *Doe v. Archdiocese of Washington*, 114 Md. App. 169, 189 (1997)); *see also Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014) ("As a general matter, equitable tolling pauses the running of, or 'tolls,' a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action."); *Cruz v. Maypa*, 773 F.3d 138, 145 (4th Cir. 2014) ("Equitable tolling is a rare remedy available only where the plaintiff has 'exercise[d] due diligence in preserving [her] legal rights.'") (citing *Chao v. Virginia Dept. of Transp.*, 291 F.3d 276, 283 (4th Cir. 2002)).

When a plaintiff fails to take any steps to reasonably investigate his claim, thereby having "slumbered on his rights," he is not afforded any additional time due to his own failure to investigate. *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984) ("One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence.").  "In other words, a [plaintiff] cannot fail to investigate when the propriety of the investigation is naturally suggested by circumstances known to him; and if he neglects to make such inquiry, he will be held guilty of bad faith and must suffer from his neglect." *Poffenberger v. Risser*, 290 Md. 631, 637 (1981) (citing *Feritta v. Bay Shore Dev. Corp.*, 252 Md. 393, 402 (1969).

Courts apply the equitable tolling doctrine sparingly. *Lehman v. United States.*, 154 F.3d 1010, 1016 (9th Cir. 1998), *cert. denied*, 526 U.S. 1040 (1999). For instance,

> [T]he Supreme Court has allowed equitable tolling when the statute of limitations was not complied with because of defective pleadings, when a claimant was tricked by an adversary into letting a deadline expire, and when the [agency's written] notice of the statutory period was clearly inadequate. Courts have been generally unforgiving, however, when a late filing is due to claimant's failure "to exercise due diligence in preserving his legal rights."

*Id*. at 1016 (alteration in original).

Possibly the two most relevant factors in determining that neither equitable tolling nor fraudulent concealment apply to the instant case are: 1) Simon does not

allege that anyone provided him with false information regarding his legal rights, and 2) Simon does not even allege in conclusory fashion that he diligently investigated whether he had a cause of action within the three years after he was released, and his claims began to accrue, on February 5, 2015. Simon does not identify a single act or inquiry that he made, between February 5, 2015, and March 18, 2019, when he states he received the victim notification letter from the Department of Justice, to determine if he had a claim against anyone related to his malicious prosecution. *See* Appellant Br. 23 ("Appellant contends it is the letter dated March 18, 2019, that reasonably established 'inquiry notice.'"); *see also* JA358. Simon points to absolutely no steps that he took to investigate whether he had a potential cause of action against Appellee Jenkins in the four-plus years between February 5, 2015, when his claims began to accrue, and March 18, 2019.

### i. APPELLANT'S CLAIMS ARE NOT SAVED BY THE DOCTRINE OF EQUITABLE TOLLING.

To be eligible for equitable tolling, a plaintiff ordinarily must show that (1) the plaintiff was pursuing the applicable rights diligently; and (2) some extraordinary circumstance stood in the plaintiff's way and prevented timely filing. *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 548 (4th Cir. 2019). "Equitable tolling 'halts the running of the limitations period so long as the plaintiff uses reasonable care and diligence in attempting to learn the facts that would disclose the defendant's fraud

or other misconduct.'" *Arvon v. Shakiba*, 2017 WL 1592555, at *3 (Md. Ct. Spec. App. May 1, 2017) (quoting *Elat v. Ngoubene*, 993 F. Supp. 2d 497, 538 (D. Md. 2014)). "But the principles of equitable tolling described above do not extend to what is at best a garden variety claim of excusable neglect." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990).

The diligence required for equitable tolling purposes is 'reasonable diligence' not 'maximum feasible diligence.' *Holland v. Florida*, 560 U.S. 631, 653 (2010) (internal citations omitted). However, in the instant case, Simon has not alleged any facts to suggest that he used any reasonable care or diligence to learn any facts related to his claims before the statute of limitations expired. He also has not alleged that any of the Appellees took any steps at all, let alone one that would constitute an extraordinary circumstance, that prevented Simon from timely filing his claims. Accordingly, Simon does not meet either of the two requirements to benefit from this doctrine.

ii.   **APPELLANT'S CLAIMS ARE NOT SAVED BY THE DOCTRINE OF FRAUDULENT CONCEALMENT.**

The fraudulent concealment tolling doctrine applies in situations "where the defendant has wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action." *Edmonson*, 922 F.3d at 549 (quoting *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir. 1987)). The doctrine only applies "when

there has been no negligence or laches on the part of a plaintiff in coming to knowledge of the fraud." *GO Computer, Inc. v. Microsoft Corp.*, 508 F.3d 170, 178 (4th Cir. 2007) (quoting *Bailey v. Glover*, 88 U.S. 342, 349 (1874)).

> This circuit has thus formalized the doctrine into a three-part test: "[A] claimant must establish that (1) the party pleading the statute [of limitations] fraudulently concealed facts which are the basis of a claim, and that (2) the claimant failed to discover those facts within the statutory period, despite (3) the exercise of due diligence."

*Id*. (citing *Pocahontas Supreme Coal Co. v. Bethlehem Steel,* 828 F.2d 211, 218 (4th Cir. 1987)).

Simon has failed to assert most important required elements of these savings doctrines, that he was diligently pursuing his rights and that the Appellees engaged in extraordinary conduct that sought to prevent Appellant from learning of his cause of action or being able to timely file his claims. Simon, having done nothing within the first four-years after his claims began to accrue, by February 5, 2015, did not engage in any reasonable investigation or otherwise exhibit any due diligence regarding the existence of a potential claim related to 2014 arrest and 2015 release. Further, Simon points to no conduct by Appellees that prevented him from filing a claim within three years of his release in 2015.

### iii. APPELLANT DID NOT SUFFICIENTLY RAISE EQUITABLE TOLLING OR FRAUDULENT CONCEALMENT WITH THE DISTRICT COURT AND THUS, HAS NOT PRESERVED THOSE ISSUES FOR APPEAL.

Appellees proffer that Simon failed to preserve either the issue of equitable tolling or fraudulent concealment at the trial court level. To the extent that Simon failed to preserve either equitable tolling or fraudulent concealment at the trial court level, there is no point in certifying a question on an unpreserved argument. If Simon failed to seek certification of either question at the trial court level, he should not be allowed to seek such relief now.

Simon's Amended Complaint does not contain a single mention of "tolling," "equitable tolling," "concealment," "fraud," or "fraudulent concealment." *See* JA17-59.

The word "toll" appears in some form in four specific places in Simon's Opposition to Defendants-Appellees Motions to Dismiss. JA612 (Asserting that "if the Court is unable to determine Plaintiff properly plead a tolling of the statute of limitations, the question of accrual date should be left to the jury."); JA613 (two mentions within a single block quote of *Green*, 31 F. Supp. 3d at 722-23); and JA630 (quoting a passage of the *Rich* opinion, wherein the district court noted that Rich had expressly contended his "limitations clock was equitably tolled."). Unlike Rich, at

no point in has Simon argued any specific element of equitable tolling in his Amended Complaint or Opposition to Defendants' Motions to Dismiss.

Similarly, the term "fraudulent concealment" appears on only a single page in Simon's 47-page Omnibus Opposition, stating in conclusory fashion that the question of tolling should be sent to a jury, in part due to the fraudulent concealment doctrine. JA613 ("the question of accrual date should be left to the jury and not dismissed via a Motion to Dismiss, under: (1) Maryland's Discovery Rule, (2) Fraudulent Concealment Doctrine, and (4) *Longtin* Doctrine, under *Prince George's v. Longtin*, 419 Md. 450 (2011)."); *see also generally* JA603-649.

For both doctrines, Simon did not actually set forth an argument for why he thought they should apply below. Instead, he merely listed them (among numerous other doctrines, cases, and concepts), provided a block quotation from cases discussing them, and hoped the district court would do his work for him. This is not enough to preserve an issue. "If a party wishes to preserve an argument for appeal, the party must press and not merely intimate the argument during the proceedings before the district court." *In re Under Seal*, 749 F.3d 276, 287 (4th Cir. 2014) (cleaned up). Although Simon mentioned equitable tolling and fraudulent concealment, thereby intimating the arguments he now actually attempts to make on appeal, he never set forth to the district court why the facts of his case meet the

requirements of these doctrines (because, of course, they do not), so he never actually made the arguments, and therefore never preserved them for appeal. *See id.*

Moreover, as stated *supra*, because Simon failed to take any steps to reasonably investigate his own claims, thereby exhibiting no due diligence as to his own rights, so Simon cannot satisfy the requirements of equitable tolling or the fraudulent concealment doctrine.

### d. SIMON'S CLAIMS ARE TIME-BARRED.

All of Simon's claims are barred by the applicable statutes of limitations, as Simon knew, no later than February 5, 2015, of the existence of possible constitutional claims against Wayne Jenkins and other BPD officers. *See* JA702. After evaluating the facts, and arguments of all parties, the district court properly concluded as follows:

> Plaintiff knew at the time of his arrest that he did not possess the planted BB gun, and that he was arrested and placed in custody without basis. Therefore, Plaintiff was on effective notice of some, if not all, of the harms he claims on March 26, 2014. But under even the most liberal construction of events, by his release on February 5, 2015, Plaintiff surely knew that the BB gun used to support his seizure was not his, and his arrest, charges, and incarceration were falsely based and wrongful. Therefore, under this permissive construct, the latest date of accrual of Plaintiff's constitutional claims set forth in Counts I and II is February 5, 2015. Plaintiff did not file his initial Complaint until March 7, 2022, more than four years after the statute of limitations had expired.

*Id.* To excuse a plaintiff, "armed with the facts about the harm done to him," from promptly investigating or "seeking advice in the legal community" "by postponing

the accrual of his claim would undermine the purpose of the limitations statute[.]" *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018) (cleaned up) (citing *Kubrick*, 444 U.S. at 123). For all the reasons set forth here, and in the ruling below, the district court's judgment should be affirmed.

### i. SIMON'S *MONELL* CLAIMS ARE TIME-BARRED.

A *Monell* claim is a claim against a municipality for the actions of its employees – including police officers – if the employees' alleged unconstitutional actions were done pursuant to a policy statement, ordinance, regulation, official decision, or a failure to properly train its employees. *See Owens*, 767 F.3d at 402. (citing *Monell,* 436 U.S.at 690).

A *Monell* claim can only proceed if the plaintiff establishes an underlying constitutional violation. *See Temkin v. Frederick Cnty. Com'rs*, 945 F.2d 716, 724 (4th Cir. 1991) ("A claim of inadequate training under section 1983 cannot be made out against a supervisory authority absent a finding of a constitutional violation on the part of the person being supervised."); *see also Belcher v. Oliver*, 898 F.2d 32, 36 (4th Cir. 1990) ("Plaintiff's effort to turn this lawsuit into one for inadequate training of personnel or conditions at the jail is unavailing where there has been no underlying constitutional infraction.") (citing *City of Canton v. Harris,* 489 U.S. 378 (1989)).

Therefore, because Simon's underlying § 1983 claims began to accrue no later than February 5, 2015, his *Monell* claims began to accrue at the same time. In *Rich*, Judge Hollander noted that the district court had not "identified any [] authority in Fourth Circuit case law" "supporting the separation of the accrual of a *Monell* claim from its predicate." 2021 WL 2589731, at *13–14. The court further noted that "the weight of relevant case law from other circuits does not seem to support separate accrual rules." *Id*.

> In *Pinaud v. Cty. of Suffolk*, 52 F.3d 1139, 1157 (2d Cir. 1995), the Second Circuit formulated what is known as a theory of delayed accrual as applied to *Monell* claims. The *Pinaud* Court reasoned: "Since an actionable claim under § 1983 against a county or municipality depends on a harm stemming from the municipality's 'policy or custom,' ...a cause of action against the municipality does not necessarily accrue upon the occurrence of a harmful act, but only later when it is clear, or should be clear, that the harmful act is the consequence of a county 'policy or custom.' " (Quoting *Monell*, 436 U.S. at 694, 98 S.Ct. 2018). However, the Second Circuit subsequently cast doubt on *Pinaud*, characterizing its accrual discussion as dicta and declining to rule "that the limitations period for a cause of action against a municipality runs anew upon the future discovery of facts tangentially related to a *Monell* claim." *Lawson v. Rochester City Sch. Dist.*, 446 F. App'x 327, 329 (2d Cir. 2011) (per curiam).
>
> Other circuits have similarly expressed skepticism as to the delayed accrual approach. *See King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 763 (5th Cir. 2015) ("We likewise decline to change our well-settled accrual rules based on dicta from the Second Circuit's *Pinaud* opinion."); *Tengood v. City of Philadelphia*, 529 F. App'x 204, 210 (3d Cir. 2013) ("There is also no basis in our precedent for applying ... a 'delayed accrual' theory."); *see also Caples v. City of Phoenix*, CV-14-02619-PHX-SRB, 2018 WL 4042115, at *3 (D. Ariz. June 28, 2018) (same), *aff'd*, 804 F. App'x 595 (9th Cir. 2020).

*Id*. Accordingly, Simon's *Monell* claims are time-barred, as his March 7, 2022 Complaint was filed more than seven years after his criminal proceedings were favorably terminated.

Assuming *arguendo*, that Simon did not have reasonable inquiry notice of his claims at the time of his 2015 release, he absolutely was on reasonable inquiry notice no later than March 1, 2017. The combination of the publications of both the August 10, 2016 Department of Justice Report on the constitutionality of BPD's policing and the March 1, 2017 reporting of the February 23, 2017 indictments of seven (7) GTTF officers, including Simon's arresting officer Wayne Jenkins, on federal criminal RICO charges, placed sufficient information into the public realm to suggest BPD engaged in "inadequate training, deficient supervision of enforcement operations, and a failure to hold officers accountable for misconduct [that] contributed to a pattern of unconstitutional policing." *See Rich*, 2021 WL 2589731, at *5.

As a result, even if Plaintiff's *Monell* claims did not begin accruing on February 5, 2015 (to be clear, they did), they absolutely began accruing no later than March 1, 2017, when the GTTF indictments were widely reported in the media. Consequently, Plaintiff's initial March 7, 2022 Complaint, filed more than 7 years after his release and more than 5 years after the reporting of the GTTF indictments, was untimely.

## ii.    SIMON'S RICO CLAIMS ARE TIME-BARRED.

As with his *Monell* claims, even if Simon was not on notice of his claims at the time of his 2015 release, he was undoubtedly on reasonable inquiry notice of his RICO claims no later than March 1, 2017.  Even if he was unaware of the alleged RICO-based specifics that played a part in *why* he was injured in 2014, that is still when he was injured, and the statute of limitations should run from when he was first aware of that injury and released in 2015.  However, even if RICO-specific notice is required, it is difficult to imagine how a criminal RICO indictment of the very officer who arrested Simon for possessing allegedly planted false evidence does not provide inquiry notice as to a potential civil RICO claim against him.  As a result, Simon's RICO claims, like his *Monell* claims, began to accrue no later than March 1, 2017.

Even with the longer four (4) year statute of limitations applied to civil RICO claims, Simon was required to file his Complaint on or before March 1, 2021.  He failed to do so.  Because Simon filed his initial Complaint on March 7, 2022, at least one year after the expiration of the limitations period, his RICO claims are untimely.  As a result, Simon's entire Amended Complaint – including the claims arising from his dates of arrest and/or release, his *Monell* claims, and his RICO claims – is time barred and the district court's decision, dismissing the Amended Complaint, must be affirmed.

## II. THE LENGTHY DOCUMENTS AND VIDEO REFERENCED IN THE AMENDED COMPLAINT BY HYPERLINK ALONE WERE PROPERLY EXCLUDED FROM THE DISTRICT COURT'S CONSIDERATION.

In his Amended Complaint, Simon "attempt[ed] to incorporate by reference, via hyperlink, documents spanning more than 1,000 pages into his Complaint" as well as "a YouTube video that spans 1:32:49 in length." (hereinafter referred to as "the Hyperlinked Materials") JA694; *see also* JA20-24, JA47-48. The district court noted that "[Appellant] would have the court assess in excess of 1,000 pages of documents, a 43-page Complaint, and a 90-plus minute video to determine whether his claims survive a dismissal challenge." JA695-696. The district court properly declined to consider the hyperlinked materials, as they were not integral to Appellant's claims:

> With respect to the hyperlinked documents and YouTube video referenced in the Complaint, the court will not consider that material in adjudicating the Motions. Plaintiff would have the court assess in excess of 1,000 pages of documents, a 43-page Complaint, and a 90-plus minute video to determine whether his claims survive a dismissal challenge. This task the court declines to undertake. *See Plumhoff v. Cent. Mortg. Co.*, 286 F. Supp. 3d 699, 704 (D. Md. 2017) (quoting *Belanger v. BNY Mellon Asset Mgmt., LLC*, 307 F.R.D. 55, 58 (D. Mass. 2015)) (remarking that "the complaint is 'way too long, detailed and verbose for either the Court or the defendants to sort out the nature of the claims or evaluate whether the claims are actually supported by any comprehensible factual basis.' "); *see also Hosley v. Collins*, 90 F.R.D. 122, 123 (D. Md. 1981) (quoting *DeFina v. Latimer*, 79 F.R.D. 5, 7 (E.D.N.Y. 1977)) (holding that "[t]he instant complaint ... (which) places an unjustifiable burden on defendants to determine the nature of the claim against them and to speculate on what their defenses might be, and which imposes a similar burden on the court to sort out the facts

now hidden in a mass of charges, arguments, generalizations and rumors, violates the [FED. R. CIV. P. 8] ..., and is subject to dismissal.")

*Id*. Moreover, even if the district court had elected to consider the Hyperlinked Materials, Appellants' claims would still have been dismissed. Simon points to nothing within the Hyperlinked Materials that would satisfy the required elements of equitable tolling or fraudulent concealment, particularly when he fails to assert any actions on his part to suggest that he was otherwise diligent in pursuing his claims. Accordingly, even if the district court should have considered these materials – it should not have – there was no prejudice to Simon in its refusal, and any error was therefore harmless. Simon's case needed to be dismissed either way.

**a. STANDARD OF REVIEW.**

A district court's decision, regarding Rule 8 of the Federal Rules of Civil Procedure, is reviewed under an abuse of discretion standard.[14] *Gantt v. Sutton*, 225 Fed. Appx. 197, 198 (4th Cir. 2007) (citing *Ciralsky v. CIA*, 355 F.3d 661, 668–69 (D.C. Cir. 2004). Federal Rule 8(a) provides that a pleading "shall contain ... (2) a short and plain statement of the claim showing that the pleader is entitled to relief." *Ciralsky*, 355 F.3d at 668-69; *see also* FRCP 8(a). Rule 8(e) further provides that "[e]ach averment of a pleading shall be simple, concise, and direct." *Id*., *see also*

---

[14] Appellant erroneously contends that the standard of review is de novo, but fails to cite to any authority that supports his contention. Appellant Br. 35.

FRCP 8(e)(1). "Taken together, Rules 8(a) and 8(e)(1) underscore the emphasis placed on clarity and brevity by the federal pleading rules." *Id*. (citing *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 702 (3d Cir. 1996)). "Enforcing [Rule 8] is largely a matter for the trial court's discretion." *Id*. "Rule 41(b) authorizes the court to dismiss either a claim or an action because of the plaintiff's failure to comply with the Federal Rules 'or any order of court.'" *Id*., *see also* FRCP 41(b).

**b.** **THE MATERIALS REFERENCED IN THE AMENDED COMPLAINT VIA HYPERLINK OR ATTACHED AS EXHIBITS TO APPELLANT'S OPPOSITION TO APPELLEES' MOTIONS TO DISMISS WERE NOT INTEGRAL TO HIS AMENDED COMPLAINT.**

It is well established that a court may "consider documents ... attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018) (citing *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)); *see also Witthohn v. Federal Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006) (holding that in ruling on a motion to dismiss, a court may consider "official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed").

An integral document is a one that by its very existence, and not the mere information it contains, gives rise to the legal rights asserted. *Goines v. Valley Cmty. Services Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citing *Chambers v. Time Warner,*

*Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (explaining that a document is "integral to the complaint" "where the complaint relies heavily upon its terms and effect" (internal quotation marks omitted)); *see also Smith v. Hogan*, 794 F.3d 249, 255 (2d Cir. 2015) (document with "no independent legal significance to [plaintiff's] claim" was not integral to complaint); *see also Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (describing an integral document as "a document that by its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted'" (citation omitted)); *see also Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007) (The documents are "not 'central' to plaintiff['s] case in the legally relevant manner because [their] existence did not create the legal rights asserted. At most, [the materials] provided plaintiff[] with some notice of a possible right of action.").

Further, the mere fact that Simon did quote minimal portions of the hyperlinked documents, which in and of themselves did not give rise to his claims, are not sufficient to incorporate the entirety of the materials into the body of the Amended Complaint. *Goines*, 822 F.3d at 166 (citing *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) ("Limited quotation from or reference to documents that may constitute relevant evidence in a case is not enough to incorporate those documents, wholesale, into the complaint.")).

Simon's claims arose out of his March 26, 2014 arrest and began to accrue no later than February 5, 2015, after when all of his criminal charges had been dismissed and he was released from incarceration. JA34-35. The materials hyperlinked to the Amended Complaint, consist of reports or documents that were published or released in 2019 (transcript of Keith Gladstone's guilty plea hearing), 2020 (Report from the Commission to Restore Trust in Police), 2022 (Steptoe Report and a video from a 2022 forum on the Steptoe Report). JA20-24, ¶ 2; *see also* JA47-48, ¶ 60. Appellant fails to demonstrate how materials that were not created until years after his arrest could possibly "give[] rise to to the legal rights asserted" in his Amended Complaint. *See Walker*, 517 F. Supp. 2d at 806 (An integral document is a one that by its "very existence, and not the mere information it contains, gives rise to the legal rights asserted.").

### c. APPELLANT'S CITED CASE LAW IS DISTINGUISHABLE AND INAPPLICABLE TO THE INSTANT CASE.

As with Appellant's reliance on *Green*, *supra*, his reliance on *Fayetteville Investors v. Commercial Builders, Inc*., 936 F.2d 1462 (4th Cir. 1991) is equally misplaced. Appellant asserts that the trial court "contradict[ed] existing precedent" when it declined to consider the hyperlinked materials referenced in his Amended Complaint as well as some exhibits that were improperly attached to his Opposition to the Appellees' Motions to Dismiss, but he does not provide or cite to the actual precedent he alleges exists. Appellant Br. 35.

*Fayetteville Investors* "[arose] out of a written construction contract." *Fayetteville Inv'rs*, 936 F.2d at 1463. It is unquestionable that a court can properly consider a contract in evaluating a motion to dismiss a contract dispute. *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013) ("Rule 10(c) states, "[a] copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes."); *see also* FRCP 10(c).

Appellant's reference to the Appellate Court of Maryland's citation to the Steptoe Report[15] in *Lomax v. State of Maryland,* 258 Md. App. 386 (2023), is also without merit. Appellant Br. at 40-41. Appellant asserts that:

> [I]n a Reported opinion in the Appellate Court of Maryland on an issue related to obtaining police records, portions of the <u>Bromwich Report</u> were adopted as any detailed public or governmental document, would be used by a Federal Court, with specific page numbers and quotations included throughout.

Appellant Br. 40. The passage Simon block-quoted from the *Lomax* opinion merely states that "[t]he report revealed that the scope of the [GTTF] corruption was widespread, and that the Baltimore City Police Department has historically fallen short in creating and maintaining a culture of lawful and ethical behavior." *Id*., at 40-41; *see also Lomax*, 258 Md. App. at 400.

Unlike the instant case, the opinion in *Lomax* did not arise from a Motion to Dismiss an Amended Complaint at the trial court level, it arose from a petition for

---

[15] The "Steptoe Report," also referred to as the "Bromwich Report" is a 660-page report released in January 2022 by Steptoe & Johnson LLP, entitled "Anatomy of the Gun Trace Task Force Scandal: Its Origins, Causes, and Consequences."

postconviction relief at the appellate level. *Lomax*, 258 Md. App. at 393. Simon fails to establish how the references to the Steptoe Report in *Lomax*, arising from an entirely different procedural path, are relevant to whether Simon alleged sufficient facts in his Amended Complaint to state a claim that would avoid dismissal. He also fails to explain the significance of a state court appellate decision on the district court's application of the Federal Rules of Civil Procedure.

Even if the standard of review as to this issue were *de novo*, Simon has failed to provide any explanation or cite to any case-law that explains how the hyperlinked materials were integral to his Amended Complaint. The Appellant, however, does not offer any argument to demonstrate that the trial court's decision, which declined to consider materials that were neither physically attached to the Amended Complaint as exhibits nor integral to the Appellant's asserted causes of action amounted to an abuse of discretion.

Accordingly, this Court should affirm the district court's decision to disregard the hyperlinked materials when it granted the Appellees' Motions to Dismiss.

## III. THERE IS NO NEED TO CERTIFY QUESTIONS TO THE SUPREME COURT OF MARYLAND AS TO EQUITABLE TOLLING OR FRAUDULENT CONCEALMENT.

The Supreme Court of Maryland "may answer a question of law certified to it by a court of the United States … if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision, or statute of this State." Md. Code Ann., Cts. & Jud. Proc. § 12-603.

To the extent that Simon has preserved the issues of equitable tolling and/or fraudulent concealment for appeal before this Court, certification of questions as to either doctrine would be improper because there is sufficient controlling law from the Supreme Court of Maryland and the Appellate Court of Maryland as to both doctrines, such that there is no need to prolong this matter or bother the Supreme Court of Maryland. *See Doe v. Maskell*, 342 Md. 684, 690 (1996); *see also Adedje v. Westat, Inc.*, 214 Md. App. 1, 13 (2013) ("equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control."); *Dual Inc. v. Lockheed Martin Corp.*, 383 Md. 151, 170 (2004) (detailing required elements of fraudulent concealment); *Windesheim v. Larocca*, 443 Md. 312, 335 (2015) (analyzing fraudulent concealment doctrine); *Piper v. Jenkins*, 207 Md. 308, 319 (1955) (Plaintiff invoking fraudulent concealment must allege specific facts regarding his investigation into his potential claims "so that the court will be enabled to determine whether he exercised reasonable diligence to ascertain the facts.")

A simple review of the existing caselaw reveals that neither doctrine is available to Simon, as he did not exercise any diligence in investigating his claims prior to the expiration of his limitation periods. In order for a plaintiff to successfully invoke the doctrines of equitable tolling or fraudulent concealment, Maryland's well-established case law explicitly requires the plaintiff to specifically allege "what diligence they exercised." *Frederick Rd. Ltd. P'ship v. Brown & Sturm*, 360 Md. 76,

113 (2000) (finding appellant could not succeed under fraudulent concealment because their filing "[did] not affirmatively allege … (iii) why they did not discover [the alleged fraud] sooner; and (iv) what diligence they exercised to discover it.").

## CONCLUSION

For the reasons set forth above, Appellees respectfully request that the Court affirm the district court's order dismissing Appellant's lawsuit as time-barred, affirm the district court's decision not to consider Appellant's hyperlinked materials, and decline to certify any questions to the Supreme Court of Maryland.

Dated: September 27, 2023

Respectfully submitted,

Ebony M. Thompson
Acting City Solicitor

/s/ James A. H. Corley
James A. H. Corley
Alexa E. Ackerman
  Chief Solicitors, Office of Legal Affairs

Michael P. Redmond
  Director of Appellate Practice

CITY OF BALTIMORE LAW DEPARTMENT
100 N. Holliday Street, Suite 101
Baltimore, Maryland 21202
Telephone: (410) 274-8614
Fax: (410) 396-2126
E-mail: jim.corley@baltimorecity.gov
        alexa.ackerman@baltimorecity.gov
        michael.redmond@baltimorecity.gov

*Counsel for Appellees*

# CERTIFICATE OF COMPLIANCE

1.  This document complies with type-volume limits because, excluding the parts

    of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure

    statement, table of contents, table of citations, statement regarding oral

    argument, signature block, certificates of counsel, addendum, attachments):

    This document contains <u>11,515</u> words.

2.  This document complies with the typeface requirements because:

    This document has been prepared in a proportional spaced typeface
    using Microsoft Word in 14-point Times New Roman.

Dated:  September 27, 2023            Respectfully submitted,

                                     <u>/s/ James A. H. Corley</u>
                                     James A. H. Corley
                                     Chief Solicitor, Office of Legal Affairs

                                     CITY OF BALTIMORE LAW DEPARTMENT
                                     100 N. Holliday Street, Suite 101
                                     Baltimore, Maryland 21202
                                     Telephone: (410) 274-8614
                                     Fax: (410) 396-2126
                                     E-mail: jim.corley@baltimorecity.gov

                                     *Counsel for Appellees*