In The

# United States Court of Appeals

### For The Fourth Circuit

## DEMETRIC SIMON

*Plaintiff – Appellant*,

v.

## KEITH GLADSTONE, ET. AL,

*Defendants – Appellees*.

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT OF MARYLAND, IN NO. 1:22-cv-00549-JRR, THE HONORABLE JULIE R. RUBIN

————————

## REPLY BRIEF OF APPELLANT

————————

Michael Wein, Esquire
LAW OFFICES OF
  MICHAEL A. WEIN, L.L.C.
7845 Belle Point Drive
Greenbelt, Maryland 20770
(301) 441-1151

Counsel for Appellant Demetric Simon

# TABLE OF CONTENTS

Page

Argument…………………………………………………………..……….1

The Appellees Do Not Contest, The Basis of the Statute of Limitations Determination by the Trial Judge Dismissing the Case, Was One of "Question of First Impression" by an Appellate Court,  Made More Difficult to Analyze As the Trial Judge Only Briefly Dealt with the Legal Issue Involving At Least Three Positive District Court Opinions in Appellant Simon's Favor, By Dismissing the Interesting Legal Matter in a Single Footnote, while the Appellees Argued the Legal Matter Against for Nearly 20 Pages In Their Reply…………………..1

Conclusion……………….…………………………………………….....21

Certificate of Compliance……………………………………………....22

# TABLE OF AUTHORITIES

**Page**

## Federal Cases

*Burley v. BPD,* 422 F. Supp. 3d 986 (D. Md. 2019)…………………..3, 12

*Burley v. Balt. Police Dep't*, No. 19-2029, 2020 U.S. App. LEXIS 32318, (4th Cir. Oct. 13, 2020)(Order Confirming Stipulated Dismissal of Appeal)…………13

*Cox v. Stanton*, 529 F.2d 47 (4th Cir. 1975)…………………………………….11

*Estate of Knight,* 182 F.3d 908, 1999 WL 390987 (4th Cir. 1999)………….7

*Gladstone* [*Demetric Simon] v. Gladstone*, Civil Action No. 1:22-cv-00549-JRR, 2023 U.S. Dist. LEXIS 45885  (D. Md. Mar. 18, 2023). .................................1

*Green v. Pro Football, Inc.*, 31 F. Supp. 714 (D. Md. 2014) . .................. *passim*

*Gross v. Hopkins,* 2021 WL 978822  (D. Md. March 15, 2021)…………….7

*Johnson v. BPD,*  2022 WL 2209066 (D. Md., Jun 21, 2022)…………*passim*

*United States v. Kubrick*, 444 U.S. 111 (1979)…………………………….12

*McDonough v. Smith*, 139 S. Ct. 2149 (2019)………………………………11

*Nassim v. Md. House of Correction*, 64 F.3d 951 (4th Cir. 1995)(*en banc*)..11

*Rich v. Hersl,*  2021 WL 2589731 (D. Md. 2021)...........................................*passim*

## State Cases

*Baltimore City Police Department v. Potts and James*, 468 Md. 265 (2020).  *passim*

*Conaway v. State*, 90 Md. App. 234 (1992)………………………….…………..7

*Dashiell v. Meeks*, 396 Md. 149 (2006) .. ........................................................ 10

*Hecht v. Resol. Tr. Corp.*, 333 Md. 324 (2004) ................................................ 20

*Prince George's v. Longtin,* 419 Md. 450 (2011)........................................................2

## Federal Statutes and Rules

42 U.S.C. § 1983 ........................................................................................ 4, 9

42 U.S.C. § 1985 ........................................................................................ 4, 9

## Other Authorities

*Baltimore Police Department v. Potts*, Oral Arguments, Maryland Supreme Court, Avail: https://mdcourts.gov/sites/default/files/import/coappeals/media/2019/coa20200210casemisc6no51.mp4 …………………………………………………..

Steptoe Investigative Team, *Anatomy of the Gun Trace Task Force Scandal: Its Origins, Causes, and Consequences* (Jan. 2022), https://perma.cc/FP4N-D6GM (the "Bromwich Report")...........................................................2, 18

*United States v. Gladstone*, No. 1:19-cr-00094-CCB (D. Md. June 3, 2019) (Transcript and Public Guilty Plea Facts)…………………………….*passim*

Avail: https://www.baltimoresun.com/news/crime/bs-md-ci-cr-gttf-settlements-burley-20201113-4adck7w7ljf2bh7njtph7tqnem-story.html.....12

Daughter of Baltimore man killed amid GTTF police chase says $6 million settlement is 'justice' for parents," Avail: https://www.baltimoresun.com/news/crime/bs-md-ci-cr-gttf-settlement-elbert-davis-burley-johnson-20230301-67uynzdxpbfl5joxfqntk7flku-story.html ...........14

https://www.baltimoresun.com/maryland/bs-md-baltimore-spending-board-settlements-june-7-20230607-zcstuaaj7zeq5gtie37xcrfzfe-story.html ......14

**Argument**

**The Appellees Do Not Contest, The Basis of the Statute of Limitations Determination by the Trial Judge Dismissing the Case, Was One of "Question of First Impression" by an Appellate Court, Made More Difficult to Analyze As the Trial Judge Only Briefly Dealt with the Legal Issue Involving At Least Three Positive District Court Opinions in Appellant Simon's Favor, By Dismissing the Interesting Legal Matter in a Single Footnote, while the Appellees Argued the Legal Matter Against for Nearly 20 Pages In Their Reply.**

The main argument of Defendants to this Court, in seeking to affirm Judge Julie Rubin's decision *at a motion to dismiss* stage in [*Simon*] *v. Gladstone*,[1] Civil Action No. 1:22-cv-00549-JRR, 2023 U.S. Dist. LEXIS 45885 (D. Md. Mar. 18, 2023), can be found on Page 10 of Appellee's Brief.  Appellees' state, "[i]n order for Appellant's March 7, 2022 Complaint, and subsequent First Amended Complaint, to be timely, he must not have been aware of even a single cause of action against a single Defendant prior to March 6, 2019 or with respect to his RICO claims, March 6, 2018."  <u>Appellee's Brief, pg. 10.</u>  *See also,* Appellee's

---

[1] Judge Rubin's Memorandum Opinion, inexplicably, gets the name of the party Plaintiff Demetric Simon wrong, by calling him "Simon Gladstone."  J.A. 688.  Thus, the headings for the case in legal databases, like Lexis or Westlaw, are also erroneous, calling this case "*Simon Gladstone v. Keith Gladstone*."  *See Gladstone v. Gladstone*, Civil Action No. 1:22-cv-00549-JRR, 2023 U.S. Dist. LEXIS 45885 (D. Md. Mar. 18, 2023).  When cited, Appellant will nevertheless correctly note, given the presently unremedied name error, the District Court case as "[Simon] v. Gladstone […]"

Brief, pg. 11 "[O]nce a Plaintiff has enough information to know that the a (sic) wrong has been committed against him, the clock begins to run."

This is highly convenient for Defendants of all stripes, especially those who act with gross abuse of power and authority, to evade the law, and conceal their own misconduct. (Even if their actions benefited their employer, as found by the Maryland Supreme Court in *Potts,* who was aware generally speaking, of unconstitutional actions arising from a specific group of officers involved with the GTTF, but as noted by the [Bromwich Report] looked the other way, and instead promoted them. J.A. 20-22.

The Appellees argument, is not the law, particularly at a Motion to Dismiss stage, and particularly under the highly unusual facts of this case, involving a criminal conspiracy to deprive of civil rights, both generally and in Appellant Simon's specific circumstances. This could not have been achieved, but for, and with the primary help perpetrated by three Baltimore Police officers who were unknown to exist to Appellant Simon having concealed their presence from the written record, yet helped ensure Simon spent nearly 11 months in jail, before the case was *nol prossed.* [2]

---

[2] As noted in the Complaint, and argued as a relevant fact here akin to *Longtin* and other tolling methods approved in Maryland, (J.A. 670), Appellant Simon had a

Much of what the Appellees rely upon, is the opposite of how typically Defendants would frame the case, on a Motion to Dismiss based on Statute of Limitations. Most Defendants would point to specifics of how the incident took place *between* the parties. The best the Defendants can do, based on the Record and in light of the well-plead facts in the Amended Complaint, and which was addressed in the Opposition to the Motion to Dismiss, is what was obvious from Day One. That Simon was physically hit (a tortious injury act, not necessarily a Civil Rights violation to the level it truly was), by a single co-Defendant's car, chasing him (Officer Wayne Jenkins). A motor vehicle injury. According to Appellee/Defendant Officer Keith Gladstone's deposition in the *Burley v, BPD* case, and Appellee Gladstone's Guilty Plea agreement made public, Appellant Simon was already gone from the scene and at the hospital when he worked and conspired with Vignola, Jenkins, and Hankard, to plant the realistic BB-Gun, to be eventually found, and used to falsely exonerate Officer Jenkin's actions of running

---

history of significant drug addiction that had never before been treated in any way by the City of Baltimore or Court system, until he was paroled into a drug treatment program by the State of Maryland in December 2022. Simon was out of jail for a few months after his release in February 2015 to the underlying 2014 charges, before he got arrested in 2016. This was after receipt while still in prison, of the letter from the United State's Attorneys Office dated March 18, 2019, which disclosed his status as a victim of Officer Gladstone. J.A. 81, 83, 358, 670.

over a sidewalk while chasing and hitting Simon, which temporarily paralyzed him.

J.A. 339, 344-35, 359, 366-368.  As summarized in the Plaintiff's Omnibus

Opposition to the Motion to Dismiss on this point,

> "Here Simon was injured and hospitalized (and
> medicated due getting hit by a car), and away from the
> scene an hour *before,* the realistic BB-gun was delivered
> and "planted" at the scene.   Though liable under *Potts,*
> Officers Gladstone, Vignola, and Hankard, were never
> even known to exist by both Simon and the City, as
> being involved in the Deprivation of Civil Rights
> Guaranteed under the United States Constitution, under
> Sec. 1983 and Conspiracy to Deprive of said Civil
> Rights under Sec. 1985.  Gladstone's and the other
> conspirator's involvement, were only even potentially
> properly and fully knowable, after his Indictment
> unsealed on or about March 5, 2019, Vignola on or
> about September 11, 2019, and Hankard on or about
> January 15, 2020.  Simon's Complaint was timely filed
> within three (3) years of Gladstone's involvement being
> made public.  It was a few weeks before Mr. Simon
> was notified in jail, of Gladstone's name, and that he was a
> victim of Officer Gladstone's Conspiracy to Deprive
> him of Civil Rights.  *See* Attached "A."  J.A. 627-628.

The Appellants fail to address, what should happen, to reasonably explore

situations involving a real, secretive, and pernicious criminal conspiracy to deprive

of civil rights, such as occurred here, and was acknowledged in *multiple guilty*

*pleas, and a 2022 guilty jury verdict against Appellee Robert Hankard to*

*Conspiracy to Deprive Appellant of his Civil Rights.*  J.A. 433-438.  So even when

the BPD claims to have been kept "in the dark" that there had been a criminal conspiracy against Appellant, by various officers who directly participated with, and/or assisted in planting evidence to frame Appellant Simon, they choose to use that as a both a weapon and a shield.  It was used as a "shield" when convenient to the Maryland Supreme Court, in the *Potts* and *James* case, claiming *inter alia,* that *no one could possibly know* about all these criminal matters and activities done by their officer agents, and therefore the City could not be held liable.  J.A. 608, 620-623, 626-628.   The Maryland Supreme Court unanimously disagreed, setting the stage for the present litigation.

Yet, Judge Rubin's Memorandum Opinion one-sidedly fails to even address these contradictory positions by the City of Baltimore at all (even when done by the same counsels), and even though we are at a Motion to Dismiss stage.   So ignoring the *estoppel,  judicial estoppel,* and reasonably locatable public documents admissible under judicial notice, whereby the City claims in oral arguments they could not know the GTTF officers were committing criminal actions and violating citizen's civil rights, they use the "lack of knowledge" for them to be left off the hook for liability, without any discovery even beginning, for the true victims.

Appellees see no contradiction, in holding that a jailed prisoner, after being victimized and hospitalized after being paralyzed from the accident originally, who

is then carted to jail for 317 days on false charges before they were dismissed, and a few months of not being jailed, is arrested again on drug-related charges, and remains in jail for the next 6 years—that the circumstances of Mr. Simon's situation don't matter.    Likewise, the actions of the City's agents, of issuing: (1) false police reports, (2) false charges, (3) knowing wrongful imprisonment of Simon, (4) planted evidence, (5) further secretive conversations in furtherance of the conspiracy (as noted in Gladstone's plea), and  (6) lying to the grand jury (as was found to have occurred with the pleas or convictions of the three co-Defendants of Hankard, Gladstone, and Vignola),  are more than a disgrace of justice.  It instead justifies this Court's careful consideration of the matter, to distinguish a "normal" negligent and even a "normal" Civil Rights  violation, from what transpired here, which was deliberate, premeditated, planned, and an intentional abuse of power using the mechanism of the Courts and jailing an innocent victim, as leverage.

Unfortunately, with zero analysis given on the Statute of Limitations arguments presented in opposition, and none in the body of the Memorandum, it is difficult to ascertain the legal reasoning of the trial judge.  Any judicial analysis is instead, conclusory compiled into a single Footnote 12, on Page 13 of Judge Rubin's Memorandum.  *See also,* Appellee's Brief , page 21(citing J.A. 700). The Appellees notably do not claim there's any explanation given by the trial judge,

only briefing quoting the procedural "background" of the case itself as if that's a substantive substitute for the lack of legal analysis given.  *See* <u>Appellee's Brief,</u> pg. 2-3, 21 (citing Footnote 12).   The entirety of Footnote 12 reads:

> "Plaintiff defends the Motions on the basis that he did not know the identity of the individual Defendant officers until the February 2017 indictments of the GTTF defendants became well-publicized in March 2017. (ECF No. 72-12 at 13.) This argument is unavailing. *Gross v. Hopkins,* 2021 WL 978822, *4 (D. Md. March 15, 2021); *Conaway v.State*, 90 Md. App. 234, 252-53 (1992); *Estate of Knight,* 182 F.3d 908, 1999 WL 390987, *3-*4 (4th Cir. 1999); *see also,* Section III(C)(7), *infra*, regarding Plaintiff's civil RICO claims. Knowledge that BPD officers were responsible for his harms (whether on the date of his arrest or his release from custody) time provided Plaintiff ample notice of the identity of the wrongdoers such that he was on notice to investigate and pursue his claims well before the indictments  were publicized and well before his claims were time barred." J.A. 700.

Even this Footnote, is obviously factually wrong in claiming this was from the 2017 indictments, when the indictments  involving Simon's criminally convicted and corrupt police officers began in 2019 through 2020. Appellees discuss the *Hersl* prosecution at the trial Court and again, in this Court, even though that's respectfully irrelevant to what Simon reasonably knew to the fact finder, especially at a Motion to Dismiss stage. (With the Appellees claiming at Page 20,

the 2019 and 2020 indictments are "irrelevant") The trial Court noted, it was

essentially adopting *Hersl's* analysis, but failing to try to distinguish (or mention),

the greater number of contrary authorities. By doing so, the trial court was, at least,

direct in its decision, noting,

> "Therefore, Plaintiff was on effective notice of some, if
> not all, of the harms he claims on March 26, 2014. But
> under even the most liberal construction of events, by his
> release on February 5, 2015, Plaintiff surely knew that
> the BB gun used to support his seizure was not his, and
> his arrest, charges, and incarceration were falsely based
> and wrongful. Therefore, under this permissive construct,
> the latest date of accrual of Plaintiff's constitutional
> claims set forth in Counts I and II is February 5, 2015.
> Plaintiff did not file his initial Complaint until March 7,
> 2022, more than four years after the statute of limitations
> had expired."   J.A. 702.

And that's it.  The parties and this Court are effectively left to guess as to

what legal arguments or cases the trial judge considered most persuasive in the

matter, other than it wholesale adopted *Hersl,* without interpreting any contrary

decisions.  The trial court then further erred its approach, without examination of

the Maryland Discovery Rule's mechanisms of fraudulent concealment and

equitable tolling, to mean, three years are treated as if they are a Statute of Repose,

and nothing else was apparently considered.

The trial Court appears to claim above Demetric Simon should have accomplished in his time in jail, after being wrongfully imprisoned as a grievous punishment by certainly some of the Appellees, for being in their way. The trial court, mistakenly applies a near impossible standard, as a preclusive obstacle, despite at that time, the entire City of Baltimore was unable to muster for years, which was both to discover and put a stop to the conspiracy of depriving citizens like Appellant of their civil rights. It instead took a team of highly trained Federal Agents, to uncover, about 4 years later this conspiracy, made public with Appellee Gladstone's indictment in March of 2019.

Here Simon was injured and hospitalized (and presumably medicated due getting run over by a car), and away from the scene an hour *before,* the realistic BB-gun was delivered and "planted" at the scene. Though liable under *Potts,* Officers Gladstone, Vignola, and Hankard, were never even known to exist by both Simon and the City, as being involved in the Deprivation of Civil Rights Guaranteed under the United States Constitution, under Sec. 1983 and Conspiracy to Deprive of said Civil Rights under Sec. 1985. Gladstone's and the other conspirator's involvement, were only even potentially properly and fully knowable, after his Indictment unsealed on or about March 5, 2019, Vignola on or about September 11, 2019, and Hankard on or about January 15, 2020. Simon's Complaint was timely filed on the

first business weekday, within three (3) years of Gladstone's involvement [*and existence* in the case] being made public. It was a few weeks before Mr. Simon was notified in jail, of Gladstone's name, and that he was a victim of Officer Gladstone's Conspiracy to Deprive him of Civil Rights. *See* Attached "A."

The trial court's decision also respectively ignores the public policy in play, which Maryland law notes applies in its applicable discovery Rule. It would be highly unfair, and nigh impossible, Appellant Simon should have precognitively predicted, that three heretofore unknown police officers, unknown to him, but not unknown to the BPD. They were, however, not mentioned anywhere as being involved in any report involving Appellant, would actively conspire and participate in framing him, and continued with this secret conspiracy, for years. That was, until the Federal authorities intervened and openly charged Appellees Gladstone and Vignola in 2019, and Appellee Hankard in 2020 after Hankard also was indicted for lying to a grand jury.

The realistic BB gun being planted, was used to *post facto* justify the assault and battery by Jenkin's vehicle. Appellant Simon was already at the hospital, via ambulance. He couldn't possibly have seen it planted, underneath a nearby vehicle. Maryland's law makes this clear, the Defendant does not get a positive legal benefit, for committing a fraud, as a bad actor.

> "Therefore, the discovery rule tolls the running of the statute of limitations and it is ordinarily a question for the jury or the ultimate factfinder as to whether the plaintiff failed to discover the cause of action because he failed to exercise due diligence or whether he was unable to discover it (and, as a result, unable to exercise due diligence) *because the defendant concealed the wrong."*
> [Emphasis Added]

*Dashiell v. Meeks*, 396 Md. 149, 169, (2006).

This case marks the second time this Court potentially could have addressed a case involving the unparalleled misconduct of Baltimore's Gun Trace Task Force (GTTF) Officers. There was an original "test case" with different facts, involving older criminal charges related to a 2010 high speed chase, whereby after an innocent civilian was killed in the chase, some GTTF officers assisted in planting evidence of drugs. Judge Ellen Hollander of the Federal District Court of Maryland, ruled against the City at a Motion to Dismiss stage in 2019[3], noting in part,

> "Although the Maryland statute of limitations applies, the matter of when a cause of action has accrued under § 1983 is a federal question. *Nassim v. Md. House of Correction*, 64 F.3d 951, 955 (4th Cir. 1995) (en banc) (citing *Cox v.*

---

[3] The City appeal the Court's denial of a sovereign immunity, and the case proceeded with discovery. After the City also lost in the Maryland Supreme Court's *Potts* case, the case was settled shortly before oral arguments in this Court.

*Stanton*, 529 F.2d 47, 50 (4th Cir. 1975)); *see also McDonough v. Smith*, [...], 139 S. Ct. 2149, 2155 [...] (2019). "An accrual analysis begins with identifying 'the specific constitutional right' alleged to have been infringed." *McDonough*, 139 S. Ct. at 2155 (quoting *Manuel v. Joliet*, __ U.S. __, 137 S. Ct. 911, 920, 197 L. Ed. 2d 312 (2017)).  The date of accrual occurs "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Nassim*, 64 F.3d at 955 (citing *United States v. Kubrick*, 444 U.S. 111, 122-24, [...] (1979)). However, "the answer is not always so simple." *McDonough*, 139 S. Ct. at 2155. "Where, for example, a *particular claim may not realistically be brought* while a violation is ongoing, such a claim may accrue at a later date." *Id.*
Maryland law is largely consistent with federal law. Therefore, I shall look to both federal and Maryland cases concerning accrual."  [Emphasis Added]

[...]

Accrual cannot occur until the plaintiff has (or should have) "possession of the critical facts that he has been hurt and *who has inflicted the injury." United States v. Kubrick*, 444 U.S. 111, 122 [...](1979) [...] [Emphasis Added]

*Burley v. Balt. Police Dep't*, 422 F. Supp. 3d 986, 1018 (D. Md. 2019).

*Burley* and *Mathews* settled their case with the City for $8 million dollars, shortly before oral arguments in this Court, on the pending *interlocutory* appeal of the denial of sovereign immunity by Judge Hollander.  *See, "*Baltimore expected to pay $8 million to settle Gun Trace Task Force lawsuit, eclipsing amount in Freddie

Gray case," Avail: https://www.baltimoresun.com/news/crime/bs-md-ci-cr-gttf-settlements-burley-20201113-4adck7w7ljf2bh7njtph7tqnem-story.html; *see also, Burley v. Balt. Police Dep't*, No. 19-2029, 2020 U.S. App. LEXIS 32318, (4th Cir. Oct. 13, 2020).

There was one other multi-million dollar settlement the BPD, involving the same incident as the *Burley* and *Mathews* defendants, but with the twist that it was brought by the family of the victim killed in 2010, as a result of the high-speed police chase by Burley and Matthews, though against BPD for their civil rights violations against Burley and Matthews, deceiving the civil Plaintiffs from the misconduct of the GTTF officers there. Those parties and attorneys as well chose to proceed against the BPD, and even after having some involvement in *Burley's* settlement, the Estate sought a separate suit against the BPD, which Federal Judge Stephanie Gallagher denied both the City's Motion to Dismiss Complaint and Motion for Summary Judgment, which was followed by a 6 million dollar settlement in 2023 by the City of the 2010 actions. *See, "*Daughter of Baltimore man killed amid GTTF police chase says $6 million settlement is 'justice' for parents," Avail: https://www.baltimoresun.com/news/crime/bs-md-ci-cr-gttf-

settlement-elbert-davis-burley-johnson-20230301-67uynzdxpbfl5joxfqntk7flku-story.html. [4]

Even though Appellant included a copy of these persuasive Federal Memorandum opinions, which were attached to the Appellant's <u>Opposition</u>, and argued therein on the Statute of Limitation concern, and incorporated therein, they were not even addressed by the trial judge. J.A. 502-552, J.A. 614 ("Presently, the City of Baltimore is facing a Wrongful Death suit, for their 2010 actions, which led to the death of Elbert Davis, Sr. killed after GTTF officers recklessly chased Burley and Matthews. Judge Stephanie Gallagher has denied the Defendants respective Motion for Summary Judgment arguing many of the same legal arguments as in *Simon,* just arguably less causally related, and at a more distant period of time. Accordingly, Plaintiff incorporates Judge Gallagher's Memorandum Opinion, into

---

[4] Although the Appellees include a number of citations to news articles, those entirely focus on the 2017 indictments involving other GTTF officers who plead guilty, which amongst the co-Defendants here, only Officer Jenkins was implicated. <u>Appellee's Brief,</u> pg. xiii. The only news article not from 2017, was a 2021 piece, noting there had been 30 settlements by that date. This is now up to 41. *See* https://www.baltimoresun.com/maryland/bs-md-baltimore-spending-board-settlements-june-7-20230607-zcstuaaj7zeq5gtie37xcrfzfe-story.html ("The latest GTTF settlement is the 41st reached by the city in connection with the rogue police task force. More than $22.6 million has been paid out in settlements and an untold amount spent on litigation fees related to the cases.")

the foregoing Omnibus Opposition. *See* Attachment "H". Other cases, were settled

by the BPD and the City of Baltimore, for reasons that remain inexplicable, as

having no conceivable Statute of Limitation defense, and being from a time far

more distant than Simon's case. *See* Attachments, "G," "I" and "J.") (J.A. 614)

As stated and now quoted at greater length below, Judge Gallagher's Opinion

had already been incorporated as being distinctly similar to Appellant's case. J.A.

614. This is on what appears to be a Question of First Impression, at least when

involving GTTF Defendants. In *Johnson,* Judge Gallagher noted:

> "Instead, Plaintiffs have put forth sufficient facts that, when
> construed in the light most favorable to them as non-
> movants, demonstrate that the "conscience-shocking" facts
> had been concealed by the Defendants. In sum, the viability
> of Plaintiffs' § 1983 claims was markedly different before the
> federal investigation into the GTTF revealed Defendants'
> misconduct in this case than it was afterward. Before that
> investigation, a fictitious statement of probable cause,
> corroborated by the "discovery" of planted drugs and two
> fraudulently induced guilty pleas to drug charges, all
> supported the belief that there was nothing unusual about the
> Defendants' conduct during this incident. In other words,
> before 2017, it seemed (to everyone except Burley and
> Matthews) that Defendants were conducting legitimate police
> work on April 28, 2010, even if, as Gail Davis testified in
> 2014, she believed "[t]he high speed chase . . . was wrong[.]"
> ECF 176 at 5. By contrast, if Plaintiffs' version of events
> proves correct, the federal investigation into the GTTF
> revealed that the April, […] 2010 incident involved no police
> work at all, but rather was an attempted robbery by
> individuals who happened to be employed as police officers

and had access to the tools and resources to conceal their crimes. And none of what Defendants point to could have armed Plaintiffs with that knowledge before 2017. Burley hardly would have been the first criminal defendant to proclaim his innocence, file a motion to suppress challenging a statement of probable cause, and then plead guilty after the motion was denied. And even if there were reports of misconduct by plainclothes units within the BPD, or by Jenkins himself, those reports clearly did not reveal Defendants' criminal conduct during this particular incident. Accordingly, Defendants have not met their burden to show that Plaintiffs' § 1983 claims accrued in the immediate aftermath of the April, 2010 incident, and their motion for summary judgment is denied insofar as it argues that Plaintiffs' § 1983 claims are time-barred."

*Johnson v. Balt. Police Dep't*, 608 F. Supp. 3d 227, 245 (D. Md. 2022).


The Appellees also wrongly contend in their Brief, that somehow, the arguments they themselves recognize on appeal, of Appellant arguing issues of equitable tolling, Maryland's Discovery Rule, and Fraudulent Concealment (well enough they spend four pages beginning on page 21, that "Appellant's Reliance on *Greene v. Pro Football, Inc.* [31 F. Supp.3d 714 (2014)] Is Misplaced,") are particularly unavailing.

This Court need only go to the Appellees' various <u>Reply Memoranda</u>, to appreciate the Appellees/Defendants understood quite well the Appellant was

making these arguments, and that the singular decision of *Rich v. Hersl*,[5] in addition

to being non-precedential, but at most relevant for persuasive value, paled in

comparison to the other cases argued by Appellant, of *Burley* (also by Judge

Hollander, though without the concerns about questionable "side-deals" between

the parties to get favorable precedent in later cases (J.A. 624-629)), *Johnson* (by

Judge Gallagher), and *Greene* (by Judge Messitte), were far more persuasive to

consider by Judge Rubin.

Though mischaracterized, as noted by Appellees BPD, Vignola, Guinn, and

Palmere's "Reply", they spent *eight pages,* arguing these legal doctrines to the

Federal District Court. J.A. 655-662. They start off with,

---

[5] Appellant went into detail, how *Hersl,* itself was irregularly argued by both parties
in that case, as it involves a **2007** claimed Civil Rights violation, the Plaintiff
claiming it was really in 2017 in their Opposition, and yet it was **Plaintiff** who
attached detailed State Tort Claims Act Notices from 2007 and 2009, which
detailed *Rich's* knowledge of his identical action to the one he sought 13 years later.
Yet, inexplicably, despite being likely factually and legally frivolous at that point
by the Plaintiff, the City failed to seek immediate dismissal of the Claim on that
basis, allowing the Plaintiff's to claim favorable case law, with some settlement
discussions indicated between the *Rich* and *Hersl* parties, and this case being used
later as "persuasive precedent" against Simon's far more recent, and complicated
circumstances, that could justify even a punitive damages being awarded against
BPD. J.A. 590, 594, 597-600.

> "Plaintiff's only argument as to why his claims are not
> time-barred is his assertion in ¶ 40 of his Amended
> Complaint:
>
> Until the U.S. Attorney's Office revealed the Gladstone
> and Hankard Indictments, Plaintiff Simon did not know
> and could not have known the full extent of when,
> how, and why he was injured as described herein, as well
> as begin to know those responsible for the same injuries.
> ECF No. 11, ¶ 40 " (J.A. 655)

Same with all the rest of the Appellees at the trial court. Their "Reply" goes

for *ten pages* arguing against the Appellant's contentions of Equitable Tolling,

Fraudulent Concealment, and Maryland's Discovery Rule.    J.A. 670-679.   These

five Co-Defendants, thusly summarize,

> "Plaintiff's attempted reliance on *Burley v. Baltimore Police
> Department*, 422 F. Supp. 3d 986 (D. Md. 2019) and *Johnson
> v. Baltimore Police Department*, No. SAG-18-2375, 2022 WL
> 2209066 (D. Md. Jun. 21, 2022) to save his claims is
> misplaced." J.A. 677.

Respectfully, any of the Appellees brief arguments to the contrary, are

meritless, especially when it was repeatedly stressed to the Court, these unusual

facts, involve extreme concealment and criminal misconduct by the responsible

entity of the BPD, and their agents/officers, which was supported in extraordinary

detail by the public 660-page Task Force Report by the Independent Investigation

18

done by Michael Bromwich. Appellant's arguments, specifically discussing in

depth, *Burley, Johnson* (recently decided then by Judge Gallagher, and specifically

incorporated and attached to the Opposition)*,* and *Greene,* were not "misplaced."

They were argued, and Appellees certainly understood the arguments well enough

to spend eighteen (18) pages of their <u>Reply</u> on these subjects, and ten (10) pages of

their Appellee's Brief on these subjects. <u>Appellee's Brief,</u> pages 21-30.

     Appellant has conceded at both the trial level and appeal, there appears to be

a "Question of First Impression" on the proper methodology of examining the

Statute of Limitations here, justifying not just oral arguments, but because of the

Maryland-bound concerns implicated, especially with Maryland's Supreme Court's

familiarity with the GTTF scandal after *Potts,* may well first justify Certification

from this Court, as argued in Question Presented Three. While there has been

"appellate precedent" involving the GTTF, that precedent of *Potts* and *James,* was

and remains, unanimously favorable to Appellant, recognizing the unusual

egregious misconduct involved to allow similarly situated civil rights Defendants, a

judicial legal outlet to receive compensation. [6]

_____

[6] As noted by Appellant,

"The Supreme Court of Maryland has been involved in the one and only direct

precedent tracing to the unusual egregious misconduct of "Gun Trace Task Force" cases. They were two Certified Questions Presented, one from the Federal District Court by Magistrate Judge Charles Day, the other from the Circuit Court for Baltimore City, by Judge Jeannie Hong. *See, Baltimore City Police Dep't v. Potts*, 468 Md. 265, 269 (2020)(Justice Watts)."

[…]
[*Quoting Potts,* at 316, ftnt. 11]

"In an attempt to distance themselves from responsibility for the officers' misconduct, in their opening briefs, the City and the Department contend that "[p]lanting evidence on innocent individuals (including [Potts and James]) and faking legitimate arrests (including the arrest of [Potts and James]) provided cover for the [officer]s to 'conceal[ ] their illegitimate and illegal conduct from City officials and from their superiors.'" J.A. 616, 619.

Though not addressed at all by Judge Rubin, whether done as a Motion to Dismiss, or even down the line in a Motion for Summary Judgment, *it was the Appellees/Defendants themselves* who contended that the activities which victimized Appellant Demetric Simon, were "concealment" and "criminal" of such a degree, that they couldn't know. J.A. 619. Yet, out of self-interest, and ignoring the logical fallacy created, Appellees contended, as was adopted by the trial Court, Appellant Simon needed to take and file a Civil Rights complaint, when the main perpetrators of the Civil Rights litigation were completely unknown to him or anyone else but the conspiracy perpetrators themselves, which is how conspiracies function.

Baltimore City claims it wasn't even possible for them ("no way for them to know") to have uncovered these repeated unconstitutional actions by their employees, lasting years, yet the Maryland Supreme Court noted with a bit of dry wit "we are not convinced." *Baltimore City Police Dep't v. Potts*, 468 Md. 265, 316, ftnt. 11 (2020). J.A. 619. It instead took the Federal authorities to put an end to the highly similar "pattern and practice" *Monell* violations, of which, three Co-Defendants found guilty of conspiring to violate Appellant Simon's Civil Rights, and lying to grand juries, criminally, were instead found to have been inoculated from having any civil liability at all, for the civil form of the same offense. This is

20

To the extent anything was "misplaced," as far as these arguments should be considered, it's respectfully hard to place, because it's hard to ascertain how Judge Julie Rubin considered the matter. Reviewing the <u>Memorandum,</u> finds, at most, a brief discussion in Footnote 12,[7] nowhere citing *Greene,* or *Burley,* or *Johnson* argued at length in the <u>Plaintiff/Appellant's Opposition</u> and also in the Appellee's assorted <u>Replies.</u>

## CONCLUSION

Appellant requests this Court should fully reverse the Trial Court's grant of the Motions to Dismiss, and remand the case back to the District Court of Maryland for discovery to begin in earnest.

_____

not an accurate statement of Maryland law, which also recognizes there to be "public policy" concerns implicated in these type of matters. *See Hecht v. Resol. Tr. Corp.*, 333 Md. 324, 338 (2004) ("In making a determination as to when the statute of limitations accrues in a particular circumstance, a court must do so 'with awareness of the policy considerations unique to each situation.'")

[7] This footnote, even gets the year wrongly cited as 2017, to the indictments to which Appellant argued from the Complaint itself, involving the Appellees Gladstone, Hankard, and Vignola, when they were in 2019 and 2020. J.A. 700.

RESPECTFULLY SUBMITTED ON OCTOBER 23, 2023

___/s/Michael Wein_____

Michael Wein, Esquire

*Law Offices of Michael A. Wein, LLC*
7845 Belle Point Drive
Greenbelt, MD 20770
(301) 441-1151
(301) 441-8877 (fax)
weinlaw@hotmail.com

## <u>CERTIFICATE OF COMPLIANCE</u>

1. This brief complies with the type-volume limitation of FRAP 32(a) because this brief or motion contains 5167 words, as calculated by the Word Count in Microsoft Word, excluding the parts of the brief exempted by FRAP 32(f).

2. This brief or motion complies with the typeface requirements of FRAP 32(a)(5) and 4th Cir. R. 32.1 and the type style requirements of FRAP 32(a)(6) because this brief or motion has been prepared in a proportionately spaced typeface using the word processing system Microsoft Word in font size 14, type style Times New Roman.

___/s/Michael Wein_____
Michael Wein
Counsel for Appellant Demetric Simon