# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

| | | |
|---|---|---|
| **DEMETRIC SIMON** | * | |
|     **Plaintiff/Appellant** | * | |
| v. | * | Case No. 23-1431 |
| **KEITH GLADSTONE, ET. AL.** | * | |
|     **Defendants/Appellees** | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**APPELLANT'S MOTION TO STRIKE APPELLEES' OPPOSITION (FOR MAKING PURPORTED FACTUAL REPRESENTATIONS WITHOUT INCLUDING REQUIRED AFFIDAVITS UNDER FRAP 27 FOR MOTIONS) AND/OR REPLY TO APPELLEES-DEFENDANTS' OPPOSITION MOTION ON DISCLOSURES AND PRODUCTION OF "HIGH-LOW" AGREEMENTS OR SIMILAR CONTINGENT AGREEMENTS (REGARDLESS OF APPELLEES' CHARACTERIZATION) RELATED TO ALL APPELLATE MATTERS, SUCH DISCLOSURES BEING REQUIRED IN EVERY FEDERAL APPELLATE CASE WHEN DISCOVERED, INCLUDING *NIXON V. FITZGERALD*, 457 U.S. 731 (1982), AND SPECIFICALLY THE LEGAL MATTERS OF GUN TRACE TASK FORCE (GTTF) DEFENDANTS, INVOLVING THE *POTTS*, *JAMES*, *RICH*, AND *SIMON* CASES.**

Appellant Demetric Simon, by and through his attorney Michael Wein, Esquire, pursuant to Federal Rule of Appellate Procedure (FRAP) 27 and 28, and Local Rule 27(d)(2), and this Court's Order for Response by May 2, 2024, Replies to Appellee's Opposition Response, and does hereby respectfully request this Court Order: (1) a proper Response by Appellees

include an Affidavit under oath on personal knowledge, as typically required under FRAP 27, (as was done by Appellant's Counsel discussing relevant factual and procedural matters on personal knowledge), (2) the Appellees and Appellee's Counsels, (in particular, Baltimore City Department of Law), publicly provide and disclose and in the alternative, provide this Court first a copy, of all claimed secret and/or confidential agreements, "high-low" or otherwise, they have been used in GTTF cases related in any way to appeals, precedent, or "persuasive" value including Federal Court trial Memoranda being argued to be adopted as precedent by this Court, (3) specifically make available to this Court and the public whatever "Settlement" Agreements were used in particular in the GTTF cases involving the appeals of *Potts, James,* and *Rich,*[1] and (4) provide the parties with instructions and schedule

---

[1] Pending appeal in this Court, and a Federal Memorandum issued in *Rich v. Hersl,* without any disclosures made of "side-deal" "incentives" by BPD in the *Rich* case. Based on Mr. Rich's *pro se* disclosure, discussed in Paragraphs 15-23, of Simon's Motion, on an agreement not consummated or kept fulyl secret, Rich's case remains highly relevant. Any "persuasiveness" of *Rich,* should fail, if it was the product of "collusion." The available record supports *Rich* was a "Plan B" to the failures by BPD to the "Plan A" on the certified legal issues in *Potts.*

These actions by BPD, directly affects this Court, in multiple and important ways. At a minimum, this Court should as similarly requested in *Monsanto,* issue a "Show Cause" Order, to Appellees and their self-same Counsels to provide (1) the claimed "High-low" agreement disclosed in the Baltimore Sun, in *Potts* and *James,* when it contradicted the public disclosures made previously, including in Court filings, and (2) all emails, correspondences,

on Supplemental Briefing on this important issue affecting appeals, precedent in the Fourth Circuit, and relations with both the District Court of Maryland this Court has supervisory authority over, as well as the Maryland Supreme Court, who were "Certified" a Question Presented from the Federal District Court, that truthfully arose out of the BPD's secret "side deal" and/or "high-low" agreements in *Potts* and *James*, and states as follows in support of these requests.

1. The Appellees, instead of doing what has been required in every Federal appellate case,[2] whenever and wherever a "High low" Settlement agreement has been acknowledged and/or "discovered" (often by 3rd parties), is to provide them to the Appellate Court. *See, Gator.com Corp. v. L.L. Bean, Inc.,* 398 F.3d 1125 (9th Cir. 2005); *Linde v. Arab Bank, PLC*, 882 F.3d 314 (2nd Cir. 2018)(same); *Keefe v. Prudential Prop. & Cas. Ins. Co.*, 203 F.3d 218 (3rd Cir. 2000)(same); *Carson v. Monsanto, Co.,* 72 F.4th 1261 (11th Cir., 2023)(*en banc*)(same); *see also, Nixon v. Fitzgerald,* 457 U.S. 731, 798 (1982)(Dissent by J. Blackmun, Brennan and Marshall, on not

---

and actual or proposed "Settlements" involving the *pro se*-Appealed Plaintiff-Appellant Eric Rich.

[2] Significant legal research by undersigned Counsel, has not yet located a State case, and the *Baltimore City Police Dep't v. Potts [and James],* 468 Md. 265 (2020) case should not be counted as it was never disclosed to the Court.

dismissing Writ of Certiorari as "improvidently granted.") Appellees BPD have instead, refused to voluntarily provide these public and non-confidential documents, without apparently this Court ordering it.

2. With all due respect, what was serendipitously discovered with Baltimore's secret "high-low" agreements, *iare* completely relevant here and now for a variety of reasons. Addressing first, *Baltimore City Police Dep't v. Potts [and James],* 468 Md. 265 (2020).

   a. The specifics of the Settlement Agreement, and how it was "structured" are very important for the public, interested parties, lower District Courts, Maryland's high Supreme Court, and this Court to understand exactly what transpired. Appellees through Counsels, only with the discovery of the "High Low Agreement," engaged in at minimum, the appearance of collusion, to allow both the material false misrepresentations and the misrepresentations by omission, to *conceal* there was even anything like a "High-low" agreement in effect, but instead each case settled fully and fairly for $32,000. The dollar amounts for Potts was actually *14 times* what was publicly acknowledged in *Potts* and *James,* when the Plaintiffs'

counsels in that case, wanted to be "paid" the full amount of the secret "side-deal" agreement.

b. Appellee's counsels, in *Potts*, for the most part, the same as in the appeal *sub judice* in the originally requested "<u>JOINT MOTION TO CERTIFY QUESTION OF LAW TO THE COURT OF APPEALS OF MARYLAND</u>" filed on 8/28/ 2019 (Dkt 110), at Page 6, confirms the settlement amount of $32,000. *See* Attached "A." *See also,* <u>[Plaintiff Potts'] Cross-Motion for Summary Judgment […]</u> (Noting "plaintiff relies upon the joint <u>Stipulation of Material Facts Not at Issue</u> [Exhibit 3 to Defendant's Motion for Summary Judgment]"), also filed 8/28/2019 (Dkt. 109). These filings confirm, for lack of a better word, and despite appearances the parties were adversarial, they were instead coordinated by Appellee BPD and collusive.

c. As discussed in Appellant Simon's Motion, at pages 6 and 7, Footnotes 4 and 5, this Court has "cooperative federalism" relations with Mayland's Supreme Court. This is unironically and explicitly noted, by BPD in the <u>Certifying Request,</u> in a lengthy footnote, at page 28 of 32, to Federal Magistrate Judge

Charles Day, recently assigned the case from Federal Judge Theodore Chuang, in listing 21 Certified cases and then listing five cases this Court Certified to the Maryland Supreme Court." Docket 110, pg. 28.

d. Two weeks before the Certification request was officially "jointly made" the individual *Potts* Plaintiff agreed with BPD to file as part of a Motion for Summary Judgment attachment, a "STIPULATED STATEMENT OF UNDISPUTED MATERIAL FACTS" totaling 29 pages. *See* Attached "B," *Potts v. BPD,* TDC 16-3187, Filing Dated 8/13/2019 (Dkt. 106-3). In it, at Page 9, Paragraph 36, the already colluding parties in that case, continue to repeat the misrepresentation of the Settlement amount, and misrepresent by omission at least, the very fact something like a "High-low" Settlement agreement on appeal existed. Deputy Solicitor Corley, *repeatedly,* in both Briefing and in oral arguments, told the Maryland Supreme Court Justices, they had *no choice* but to rely upon these "Stipulated Facts." (J.A. 621-623)(Links of webcasted Maryland Supreme Court oral arguments with Timestamps)

e. There doesn't appear to be any present "privacy" rights whatsoever, to keep secret the paperwork and related materials, on the claimed "High-low" Settlement reached in the *Potts* and *James'* cases. It's most certainly a "side-deal" that has never been publicly attempted before in any Court, and though characterized as a "high-low" agreement by Appellees, it's not like any other "high-low" agreement has been attempted before in an appellate court.[3]

f. The City of Baltimore is not a private party entity, but a governmental municipality, and the parties have already disclosed and/or waived confidentiality. This was at both the Baltimore City Public Works setting, and in the original Motion's Baltimore Sun article dated August 12, 2020. "Attached A," Thus, this Court should Order full disclosure and production of the Agreements in the *Potts* and *James* cases.

---

[3] As noted in Exhibit F, in Appellant's Motion, and Attorney Wein's Affidavit, Plaintiff's Counsel in *Monsanto*, expressed similar reservations the "'so-called 'high-low' settlements which have been begrudgingly upheld by sister circuits. But Carson's pay-to appeal scheme *is not a 'high-low' agreement at all* and its central features—tying payment to the appeal itself, Monsanto's dictation of his litigation strategy, and severe sanctions for not appealing—bear little resemblance the settlements described by Monsanto." Wools' Letter to Eleventh Cir. in *Carter v. Monsanto*, pg. 5. Appellees legally and factually non-specific, and not under oath contentions in a 3-page Opposition Response, should be given zero weight by this Court.

> This is especially, since, traditionally the amount of settlement is the **only** part that's actually importantly confidential, and these are always public for governmental entities, and this was publicly disclosed and discussed by the parties in the Baltimore Sun article and Public Works meeting. What's important, and in no way confidential, are all questionably ethical side agreements that were made in furtherance, and how these dollar amounts were structured. *See Baltimore Sun v. Mayor & City Council of Baltimore,* 359 Md. 653, 664 (2000)(Maryland Supreme Court reversing Baltimore Circuit Court's Order "sealing" Courtroom and denying Maryland Public Information Act (MPIA) request for information, stressing the "common law principle that court proceedings, records, and documents are open to the public was fully applicable in this case" and noting in most circumstances, MPIA requests for the Settlement documents of Governmental entities are publicly available); *see also, ACLU Foundation of Md. v. City of Salisbury,* 2018 Md. Cir. Ct., LEXIS 5.

3. *Nixon v. Fitzgerald,* 457 U.S. 732 (1982) is an important 5-4 United States Supreme Court case, and while not addressed as part of the

merits, *Nixon* appears to be the first attempt ever to argue a "High-Low" Settlement agreement in appeals. While the Appellees lambaste on Page 2, the "procedurally impermissible" motion seeking to "inject entirely new issues into his matter at this extremely late point in the appeal" the Three-Justice Minority in *Nixon,* would blame the Appellees for engaging in the purported "High-Low" and other similar shenanigans done by BPD's "side deals" made in settlement agreements related to appeals and precedent.

4. Specifically, Justice Blackmun stated:

   "I join JUSTICE WHITE's dissent [on not granting absolute Presidential Immunity on civil actions to former President Nixon].

   I also write separately to express my *unalleviated concern* about the *parties' settlement agreement, the key details* of which were not disclosed to the Court by counsel *until the veritable "last minute,"* and even then, *only because the Halperins' motion to intervene had directed the Court's attention to them. See ante,* at 743-744, n. 24. The Court makes only passing mention of this agreement in Part II-B of its opinion.

   […] Surely, *had the details of this agreement been known at the time the petition for certiorari came before the Court, certiorari would have been denied. I cannot escape the feeling that this long undisclosed agreement comes close to being a wager on the outcome of the case, with all of the implications that entails*." [Emphasis Added]

   *Nixon v. Fitzgerald,* 457 U.S. 731, 797-799 (1982) (J. Blackmun, Brennan, and Marshall, dissenting)

5. In other words, back in 1982, three Justices excoriated even the concept of "High-Low" Settlement agreements being done in any appeal scenario. None appear to have been done publicly for the next *24 years,* until *Gater.com's* in the Ninth Circuit. And *Nixon,* like *Monsanto,* wasn't discovered and brought to the Court's attention, until a third-party happened upon it at the "last minute."

6. As Attorney Wein's Affidavit explained, he just learned and discovered within a few days of the Motion filing with this Court, (1) Rich had publicly corroborated in a *pro se* filing the highly unusual and inexplicable "settlement" offers of $150,000 and $75,000, made by party Defendants represented by counsels directly and indirectly representing Baltimore[4], (2) Eric Rich had done a *pro se* appeal, pending in this Court and was appointed IFP counsel, (3) the *en banc* Eleventh Circuit, had just dealt with similar shenanigans in the billion dollar "Roundup" Class-action lawsuit, with the intervening Attorney Wool, providing a remedy method granted in that Court, the first time it has been necessary to seek since *Nixon*, and (4) Magistrate Judge

---

[4] *Rich's* Plaintiff counsels agreed to "late" Motions to Dismiss filings, for all Defendants, Hersl who perspicuously refused to "join" the Motion to Dismiss. This cynically allows *a separate* settlement from the same paying Defendant of Baltimore, which would not technically be a "High-low" agreement.

Copperthite, even remarked in *Rich,* about the concerns manifested by the appearance of collusion (without spelling that out) between the Plaintiff and Defendants' counsels in *Rich,* noting it "violates the same principles of the adversary system [… Hersl] could have easily joined the motion to Dismiss as his co-Defendants chose to do [and…] and his Motion to Amend violates the principle of party presentation and is untimely as well." <u>Appellant's Simon's Motion</u>, Attached "B."

7. The Appellees throw out one last *non sequitur* argument, "[Appellant's] insistence that the high-low agreements that led to *Potts* were somehow nefarious or improper is flatly absurd, and an insult to Judge Andre M. Davis, who was City Solicitor at the time of those agreements." <u>Response,</u> pg. 3. With all due respect, not once did Appellant so much as mention former-Solicitor and Federal Judge Davis. It's irrelevant to the arguments made, and *per se* unethical, for the Baltimore Department of Law, to even reference former City Solicitor was also a former Federal "Judge." *See* <u>Code of Conduct for United States Judges Canon 2(b) Commentary; The Committee on Codes of Conduct revised Advisory Opinion 70, June 2009 ("Use of Title Judge by Former [Federal] Judges)</u> ("[A]pplication of the same

11

title to advocates and to the presiding judicial officer can tend to demean the court as an institution. Judges should insure that the title "judge" is not used in the courtroom or in papers involved in litigation before them to designate a former judge, unless the designation is necessary to accurately describe a person's status at a time pertinent to the lawsuit.")(Avail:

https://www.uscourts.gov/sites/default/files/guide-vol02b-ch02_2.pdf; *see also, Chisolm v. Transouth Fin. Corp.,* 2000 U.S. Dist. LEXIS 8463 (U.S. Dist. Ct., E. D. Va. 2000) (J. Raymond Jackson)(On *sua sponte* Disqualification of former judge of district.)

8. Ultimately, there exists significant support for the Requests for Disclosure and Production of Settlement Agreements made by Appellant in this Court. The use of any "high-low" agreements on appeal, if legal at all, are an exceptional rarity, to be done or attempted. There's never been a case, where it was done "secretly" though *Nixon* is the closest. All Federal Courts of Appeals, though no formal "Rule" has been adopted on the subject yet, appear to require their disclosure and production of the actual Settlement Agreements, which as was argued in *Monsanto,* should include "the immediate production to the Court of the underlying settlement agreement and all

documents evidencing communications concerning the same. This sort of judicial manipulation must be loudly and forcefully rejected." Appellant's Simon's Motion, Attachment "E," Pg. 6 of "[Attorney Wool's] Letter Brief."

9. Further Briefing after proper production of all the Settlement offers made, consummated, or unconsummated, in the GTTF cases of *Potts, James,* and *Rich,* is appropriate. This is not just about there may be lack of "subject matter" jurisdiction like in *Gater.com.* It's what's discussed in two judge's opinion in *Monsanto,* and a direct beeline from *Nixon,* where three Justices would have issued a Dismissed as Improvidently Granted (DIG) of these machinations kept secret between parties, and therefore manufacturing appellate precedent. Any previous cases under common law, that are "collusive" should become significantly less persuasive for this Court, to become precedent, to assure the public there are not "pay to appeal" or similarly mischievous schemes, done by appellate counsels.

WHEREFORE, it is respectfully requested that this Honorable Court grant the Previously filed Appellant's Motion For Fourth Circuit To Order Appellees And Appellees' Counsels To Disclose And Produce All Secret

And/Or Claimed Confidential "High-Low" Settlement Agreements

Involving Gun Trace Task Force (GTTF) Cases.

                                          Respectfully Submitted,

                                          _____/s/_ Michael Wein_____

                                          Michael Wein, Esquire
                                      Law Offices of Michael A. Wein, LLC

                                          7845 Belle Point Drive
                                          Greenbelt, MD 20770
                                          (301) 441-1151
                                          (301) 441-8877 (fax)
                                          weinlaw@hotmail.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this  2nd   day of  May_ , 2024, a copy of the foregoing <u>Reply</u> was electronically filed, with notice to:

James Corley, Esquire
Alexa Ackerman, Esquire
Michael Redmond, Esquire
Baltimore City Department of Law
100 N Holliday St. Ste. 101 Baltimore, MD 21202
*Counsel for Appellees*

                                          _____/s/ Michael Wein_____
                                              Michael Wein, Esquire

# **CERTIFICATE OF COMPLIANCE**

1. This brief or motion complies with the typeface requirements of FRAP 32(a)(5) and FRAP 27(d)(1) and the type style requirements of FRAP 32(a)(6) because this brief or motion has been prepared in a proportionately spaced typeface using the word processing system Microsoft Word in font size 14, type style Times New Roman.

2. This Motion complies with the type-volume limitation of FRAP 32(a)(7) and FRAP 27(d) (2) because this brief or motion contains 2593 words, excluding the parts of the brief exempted by FRAP 32(f), and FRAP 27(d)(1)(E) as calculated by my word processor, Microsoft Word, in determining the count.

        _____/s/__Michael Wein_____
          Michael Wein
          Counsel for Plaintiff/Appellant