

Page Printed From:

https://www.law.com/nationallawjournal/2024/07/02/abuse-of-process-or-healthy-strategy-4th-circuit-case-highlights-debate-over-high-low-deals-in-appeals/



NOT FOR REPRINT

NEWS

## Abuse of Process or Healthy Strategy? 4th Circuit Case Highlights Debate Over High-Low Deals in Appeals

Typically found at the trial level, high-low agreements set a maximum and minimum amount that can be awarded after a verdict. For plaintiffs, they guarantee a base amount will be received; for defendants, they can prevent nuclear verdicts.

July 02, 2024 at 01:15 PM

Civil Appeals



Avalon Zoppo



In 2020, the Maryland Supreme Court concluded that Baltimore was on the hook to pay settlements arising from the city's Gun Trace Task Force police corruption scandal in which officers were found to have planted evidence, conducted illegal searches, robbed people during street and traffic stops and filed false affidavits.

The Baltimore Sun later reported that the city had entered into outcome-determinative agreements with plaintiffs in that high court case, Ivan Potts and William James.

The certified question before Maryland Supreme Court was whether the officers' misconduct was within the scope of their employment with Baltimore. The city had reportedly agreed to pay Potts and James each $32,000 if Baltimore won the appeal or $200,000 and $400,000, respectively, if the city lost in what is known as a "high-low" deal.

The city's loss reportedly resulted in the higher payment.

Now, a lawyer representing another victim of the GTTF scandal is urging the U.S. Court of Appeals for the Fourth Circuit to force the city to disclose those agreements. He argues the city used the agreement to manipulate Potts and James to sign on to certain stipulated facts that were disadvantageous to them as part of Baltimore's attempt to generate favorable precedent in future GTTF cases.

"Any attempted use of [high-low agreements] in any appeal-related scenario, in attempting to seek benefit through future precedent, to adversely affect non-parties, is ethically dubious and highly controversial at best, and *verboten* prohibitive at worse," Michael Wein wrote in a motion to the Fourth Circuit in April.

### 'Distorting How Litigants Litigate'

In interviews with the National Law Journal, legal experts viewed the use of "high-low" agreements in appeals skeptically, saying they can be used to pressure economically disadvantaged parties to bring an appeal or agree to certain conditions. But they also said there's a broad spectrum of such deals and they can sometimes be part of a

healthy litigation strategy so long as parties disclose them so courts can be assured there's no abuse of the process.

Typically found at the trial level, high-low agreements set a maximum and minimum amount that can be awarded after a verdict. For plaintiffs, they guarantee a base amount will be received, regardless of the outcome; for defendants, the agreements can prevent nuclear verdicts.

J.J. Prescott, a University of Michigan law professor, said such agreements are more likely to be seen as an abuse of the process if the case's outcome could affect third parties, which is often true at the appellate level where courts issue precedential rulings.

"In an appeals setting, high-low agreements may affect third parties by distorting how litigants litigate—and thus how courts decide—questions of law," Prescott said.

"The outcome of an appeal can be very important to future litigants and the public more generally, but parties to the appeal are likely to be thinking only about their own interests when negotiating any sort of settlement, including a high-low agreement that allows the court to resolve legal issues with outsized future implications," he continued.

Caprice Roberts, a Louisiana State University law professor, said questions arise whether a "case or controversy" between the parties still exists when high-low agreements are introduced in the appellate process.

"Where severe forfeiture of the settlement amount occurs for failing to maintain the appeal and the settlement resolves the core of the controversy, courts should examine the appeal for Article III standing and mootness doctrines in addition to abuse of process," Roberts said. "Standing existed at the beginning of the litigation, but after the lower court ruling and the settlement agreement, it is possible that the key issues are not really in contention any more."

Roberts said it's unclear how common the agreements are in appeals.

One of the few appellate decisions to directly address the standing issue tied to high-low agreements came from the Eleventh Circuit.

A trial judge ruled that federal law preempted plaintiff John Carson's claim that Bayer, which acquired Monsanto in 2018, failed to warn about cancer risks associated with the herbicide Roundup. The judge, however, did not rule on other defective design and negligence claims.

Carson agreed to drop his remaining claims and appeal the preemption decision in return for $100,000 from Bayer plus an additional undisclosed amount if Carson won.

Lead plaintiffs attorneys in litigation over Roundup urged the Eleventh Circuit to require Bayer to disclose the deal. A split panel called the agreement "peculiar" but said it didn't render the case moot.

The Eleventh Circuit compared the settlement to one the U.S. Supreme Court approved in *Nixon v. Fitzgerald* in 1982.

There, former President Richard Nixon agreed to pay $142,000 to management analyst Ernest Fitzgerald, who claimed he was dismissed from the Air Force in retaliation for congressional testimony he gave. Nixon promised to pay an additional $28,000 if he lost at the Supreme Court on his claim of absolute presidential immunity in civil litigation.

But dissenting, Eleventh Circuit Judge Charles Wilson said the Roundup deal wasn't similar to the one in *Nixon* because there, the losing party at the lower court—not the winning one—was driving the appeal. Wilson said the Bayer-Carson agreement removed the adversarial character of the litigation.

"Agreements such as this raise troubling questions about both the adversariness of the parties and whether the judiciary can provide meaningful relief to the parties after their agreement to settle," Wilson [wrote](#).

Even if there is standing, Roberts said "high-low" agreements in appeals can be seen as an abuse of the court process if employed by a more well-resourced party to try to create a circuit split.

"There's a judicial integrity and abuse of process that could be happening that federal courts ought to be concerned about as a matter of housekeeping, as a matter of institutional integrity, as a matter of reputation of federal courts not being seen as engaging in cases where parties might be buying access more openly or trying to buy precedent," said Roberts.

## 'Range of Variations'

There are different variations of high-low agreements in appeals based on the facts of a particular case and the parties' goals, said Vanderbilt Law School professor Ed Rubin.

"Very often, it's the precedent, rather than the particular case, that is motivating the parties," he said.

"That's certainly true of cause or public interest litigation, where the parties don't care about any resolution for the individual," Rubin added. "What they care about is [establishing] a point of law, and the value of establishing a point of law is that we now have a systematic way of resolving disputes that other people can use and avoid litigation."

Parties also try to secure stipulations of facts that are more beneficial for them, Rubin said.

In the Fourth Circuit, Demetric Simon is asking the court to revive a 2022 lawsuit brought against Baltimore police officers associated with the GTTF who he claims planted a BB gun on him and charged him with fake crimes. The trial judge said the lawsuit was filed beyond the statute of limitations.

Baltimore responded to Simon's request for disclosure of the high-low agreements in other GTTF appeals by saying that information would be irrelevant to resolving the case at hand.

"Although it is understandable that the plaintiffs' bar would like for the details of BPD's [the Baltimore Police Department's] confidential settlement negotiations in other cases to be made public, so that they could try to use them to squeeze as much money from the public coffers as possible in future negotiations, there is absolutely no relevance of such documents to the legal issues currently pending before this Court in this appeal," the city's [response](#) stated.

Baltimore acknowledged its use of a high-low agreement in the Potts and James appeals and said it "allowed a swift, authoritative resolution of an open legal question." The city said the police department hasn't entered into any similar arrangements in other GTTF lawsuits.

The city of Baltimore did not respond to questions from the National Law Journal about whether the agreements were disclosed to the Maryland Supreme Court before the court issued its [opinion](#) in 2020 or what the strategic benefit of the deals was. The city's [brief](#) and [reply brief](#) in the case do not mention the high-low deal.

"That's what really troubles me—keeping them secret," Wein said. "It creates an incentive to go and manufacture precedent and have no one, including the public [and] the appellate judges, know that it was done. I think that needs to be stamped out."

Roberts said not every high-low agreement in an appeal looks the same and she doesn't think they should be categorically disfavored. But Roberts added the agreements should always be disclosed either in camera or publicly to ensure there is no collusion or abuse of process.

"Are the parties asking the federal appellate judge to issue an advisory opinion? Or, is it fine because both parties claim they have a stake in the appeal? Of course, much depends on the facts of the case, the process and the settlement terms," Roberts said.

"Repeat litigants may press a plaintiff to press an appeal to secure a favorable precedent or to create a circuit court split," Roberts added. "To the extent the parties' controversy is essentially over but the appeal is advanced purely for high-low stakes and one side's ulterior motives, federal court time and resources may be wasted. If the high-low settlement terms are kept confidential, the risk of abuse is heightened."

For example, Roberts pointed to a False Claims Act case in the Sixth Circuit from 2002.

There, Boeing paid $25 million to the government to settle claims before trial that the military contractor made and sold defective transmission gears for Army helicopters. The company agreed to pay an additional $15 million depending on how the federal appeals court ruled on a legal question regarding the scope of the FCA.

The Sixth Circuit panel held the case was not moot because the parties still had a "considerable financial stake" on appeal.

Wool Trial Law attorney David Wool said ethical concerns arise when a settlement agreement conditions payment on bringing an appeal itself or coerces the economically disadvantaged party into being a participant in an attempt to create favorable precedent for the powerful party.

"For example, in [the Eleventh Circuit case], the plaintiff was required to bring an appeal in order to get anything." Wool said.

"By contrast, in what one might consider an 'ethical' high-low agreement, there is no requirement to litigate in order to create precedent because the settlement is aimed at compensation, not trying to manipulate the court system," Wool added. "So if the plaintiff is satisfied with the 'low' settlement amount, they could just walk away with the money and opt not to bring an appeal."

Wool, who represented a winning plaintiff in a Roundup trial, urged dismissal of the Carson appeal.



Breaking news and trends for law firm and legal departments about the evolving federal regulations in a volatile political climate.

**FEDERAL LEGAL NEWS**

Courts & Litigation
Expert Columns
Latest Stories
Events

**SPECIAL COVERAGE**

Special Reports
Special Supplements

**SURVEYS & RANKINGS**

The NLJ 500

**NATIONAL LAW JOURNAL**

Current Issue
Contact
Sitemap

NOT FOR REPRINT

Copyright © 2024 ALM Global, LLC. All Rights Reserved.