**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

--------

**No. 23-1431**

--------

DEMETRIC SIMON,

                    Plaintiff – Appellant,

      v.

KEITH GLADSTONE; ROBERT HANKARD; WAYNE JENKINS; BALTIMORE
CITY POLICE DEPARTMENT; CARMINE VIGNOLA; BENJAMIN L.
FRIEMAN; RYAN GUINN; DEAN PALMERE; SEAN MILLER,

                    Defendants – Appellees.

--------

Appeal from the United States District Court for the District of Maryland, at Baltimore.
Julie R. Rubin, District Judge.  (1:22-cv-00549-JRR)

--------

Argued:  January 26, 2024                      Decided:  March 6, 2025

--------

Before WILKINSON, NIEMEYER, and BENJAMIN, Circuit Judges.

--------

Affirmed by unpublished opinion.  Judge Benjamin wrote the opinion, in which Judge
Wilkinson and Judge Niemeyer joined.

--------

**ARGUED:**  Michael Alan Wein, LAW OFFICES OF MICHAEL A. WEIN, LLC,
Greenbelt, Maryland, for Appellant.  James Arba Henry Corley, BALTIMORE CITY
LAW DEPARTMENT, Baltimore, Maryland, for Appellees.  **ON BRIEF:**  Ebony M.
Thompson, Acting City Solicitor, Michael Redmond, Director, Appellate Practice Group,
Alexa E. Ackerman, Chief Solicitor, BALTIMORE CITY DEPARTMENT OF LAW,
Baltimore, Maryland, for Appellees.

--------

Unpublished opinions are not binding precedent in this circuit.

DEANDREA GIST BENJAMIN, Circuit Judge:

Demetric Simon was unlawfully arrested and imprisoned for a crime he did not commit after police officers planted a gun on him to cover up their own hit-and-run. Simon commenced a belated 42 U.S.C. §§ 1983 and 1985 lawsuit alleging that the officers committed state-law crimes, conspired to commit civil rights violations, and engaged in civil racketeering. The district court dismissed Simon's complaint in part because it found that the claims were filed outside the applicable statutes of limitations periods and were therefore time barred.[1] We affirm the judgment.

I.

A.

Where, as here, the district court dismissed the complaint under Fed. R. Civ. P. 12(b)(6), we accept the factual allegations in the complaint as true.[2] *Parker v. Reema Consulting Servs., Inc.*, 915 F.3d 297, 300 (4th Cir. 2019) (citing *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)). The allegations show the following. *See* J.A. 17–59.

---

[1] The court dismissed Counts IV–VII on the basis of sovereign immunity. J.A. 697. Simon does not challenge the dismissal of those counts on appeal, so we do not address them.

[2] We also take judicial notice of court documents in the record involving the Defendant-officers: (1) Keith Gladstone's deposition testimony; (2) Stipulation of Facts from Keith Gladstone's guilty plea; and (3) Verdict Form from Robert Hankard's jury trial. J.A. 337–57, 366–68, 433–34.

The events giving rise to this lawsuit involve the Gun Trace Task Force ("GTTF"), a now dismantled unit within the Baltimore City Police Department ("BPD"). During a police chase on March 26, 2014, GTTF Officer Wayne Jenkins ran over Demetric Simon. [J.A. 34 ¶ 26.] Panicked, Jenkins called Officer Keith Gladstone to relay what happened and asked Gladstone to bring him a BB gun. [*Id.*] Gladstone, together with Officer Carmine Vignola, procured a BB gun from the home of Vignola's work partner, Officer Robert Hankard. [*Id.* at 34 ¶ 26; *Id.* at 366.] Then, Gladstone and Vignola drove to the scene where Jenkins ran over Simon, and Gladstone planted the BB gun at the scene. [*Id.* at 34 ¶ 26; *Id.* at 36 ¶ 31.]

Simon was transported to the hospital, where drugs were recovered from his person. [*Id.* at 367.] He was charged with possession of the gun that Gladstone planted at the scene, among other crimes. [*Id.*] To support the charges, Jenkins wrote a false statement of probable cause that was approved by a BPD supervising officer. [*Id.* at 34–35 ¶¶ 26–27; *Id.* at 367.] The criminal charges against Simon were dismissed on January 16, 2015. [*Id.* at 35 ¶ 28.] Simon, however, spent around 317 days in prison before he was released on February 5, 2015. [*Id.* at 37 ¶ 35.][3]

The Defendant-officers that participated in Simon's arrest were charged with criminal offenses for conspiring to deprive Simon of his civil rights. In addition, on March 1, 2017, Jenkins and six other officers of the GTTF were arrested on federal racketeering

---

[3] Simon also received a probation violation because of the criminal charges initiated against him. Although the criminal charges were dismissed on January 16, Simon remained incarcerated until the probation violation was dismissed. [J.A. 35 ¶ 29.]

charges.  [*Id.* at 367.]  Around May 2019, Gladstone pled guilty to conspiracy to violate Simon's civil rights.  [*Id.* at 27 ¶ 10; *Id.* at 359.]  Vignola also pled guilty to framing Simon and lying to the grand jury about his participation in the conspiracy.  [*Id.* at 29 ¶ 13].  Last, in April 2022, a jury convicted Hankard for conspiracy to violate Simon's civil rights.  [*Id.* at 28 ¶ 11; *Id.* at 432–33.]  Simon received two letters from the Department of Justice (DOJ), dated March 18, 2018, and February 21, 2020, respectively, that told him he was a victim in Gladstone and Hankard's criminal cases.  [J.A. 39 at ¶ 39.]

B.

On March 7, 2022, Simon commenced a civil action against BPD and seven police officers, including Gladstone, Hankard, Jenkins, and Vignola (together, "Defendants"). The amended complaint, filed May 31, 2022, alleged violations of his constitutional and civil rights arising from his March 2014 unlawful arrest, charge, and incarceration.

Seven counts are relevant to the instant appeal.  Simon brought federal constitutional claims asserting civil rights violations under 42 U.S.C. §§ 1983 and 1985 (Counts I and II).[4]  He also set forth state-law claims: constitutional violations under the Maryland Declaration of Rights, Article 24 (Count IV); malicious prosecution (Count V); civil conspiracy (Count VI); and malicious use of process (Count VII).  Last, he asserted federal racketeering and racketeering conspiracy claims in violation of the Civil Racketeer

---

[4] Under Counts I and II, Simon also asserted a related theory of liability against BPD for unconstitutional officer misconduct undertaken pursuant to a BPD policy, pattern, or practice ("*Monell* liability").  *See Monell v. Dep't of Soc. Services*, 436 U.S. 658, 690 (1978).

5

Influenced and Corrupt Organizations Act ("civil RICO"), 18 U.S.C. § 1961, *et seq*. (Count IX).

Defendants filed four motions to dismiss pursuant to Federal Rules of Civil Procedure 8(a), 12(b)(1), and 12(b)(6). The district court dismissed all seven counts because they were filed outside the statutes of limitations and were therefore time-barred. It determined the claims were subject to three- and four-year statutes of limitations, and that Counts I-V and VII accrued by February 5, 2015, and Counts VI and IX accrued by February 2017, at the latest. J.A. 698–709. The court concluded that by those dates, Simon knew that BPD officers had injured him, that he was released from custody, that the criminal proceedings against him terminated in his favor, and that seven GTTF officers had been publicly indicted on racketeering charges. *See id.*

When ruling on the 12(b)(6) motions to dismiss, the court took judicial notice of documents it considered matters of public record attached as exhibits to the parties' briefing. J.A. 695. However, the court declined to consider hyperlinks and a YouTube video embedded in the complaint. J.A. 694–96.

Simon appeals the dismissal of his claims and the district court's refusal to consider his hyperlinks and embedded media. We have jurisdiction over the final judgment of the district court pursuant to 28 U.S.C. § 1291.

II.

We first address Simon's contention that the district court erred when it declined to consider hyperlinks and a YouTube video embedded in the complaint.

6

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). We review a district court's decision regarding Rule 8 for an abuse of discretion. *Nemphos v. Nestle Waters N. Am., Inc.*, 775 F.3d 616, 628 (4th Cir. 2015). Here, the district court explained that Simon attempted to "incorporate by reference, via hyperlink, documents spanning more than 1,000 pages into his Complaint" as well as a "YouTube video that spans [92 minutes] in length." J.A. 694–96. It declined to consider those items because the thousands of pages and 92-minute video failed to set forth the claims in a short and plain statement as required by Rule 8(a). *Id.* We conclude that the court did not abuse its discretion because the hyperlinks and video in the complaint contravene foundational pleading standards required under Rule 8.

III.

We next analyze the primary issue on appeal: whether the district court properly dismissed Simon's claims under Rule 12(b)(6) as time-barred by the applicable statutes of limitations.

We review the district court's ruling on a Rule 12(b)(6) motion *de novo*. *Harvey v. Cable News Network, Inc.*, 48 F.4th 257, 268 (4th Cir. 2022). In so doing, we must decide whether the complaint alleges sufficient facts "to raise a right to relief above the speculative level" and "to state a claim that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). The court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia*

*Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)).

When ruling on a 12(b)(6) motion, courts are limited to considering the sufficiency of the allegations set forth in the complaint and the "documents attached or incorporated into the complaint." *Kolon Indus., Inc.*, 637 F.3d at 448 (citing *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)). If matters "outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). But a court may properly take judicial notice of matters of public record without converting a 12(b)(6) motion to dismiss into a motion for summary judgment. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004)).

Normally, the court does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses" at this stage. *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). But when it appears clearly on the face of the complaint that the statute of limitations period has run, a defendant may properly assert a limitations defense through a Rule 12(b)(6) motion to dismiss. *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)).

A.

We now consider whether Simon's claims are time-barred by the applicable statutes of limitations.

8

Defendants assert that Simon's claims all accrued no later than February 5, 2015, when Simon was released from prison and the charges against him had been dismissed—more than seven years before Simon filed this lawsuit.  Other than the civil RICO claim, which is subject to a four-year statute of limitations, the rest of Simon's claims are governed by Maryland's three-year statute of limitations and are therefore time-barred.

Simon argues that the clock began to run after he was put on inquiry notice, when: (1) Gladstone pled guilty in 2019; (2) the DOJ notified Simon in March 2019 that he was one of Gladstone's victims; and (3) the DOJ notified Simon in February 2020 that he was one of Hankard's victims.  In the alternative, Simon argues that the limitations clocks were equitably tolled.

### 1.

We begin by reviewing the statutes of limitations that apply to Simon's claims.

To determine the statutes of limitations for Simon's claims asserted under 42 U.S.C. §§ 1983 and 1985 (Counts I and II), this court borrows the applicable statute of limitations period from the "most analogous state-law cause of action."  *Owens v. Balt. City State's Att'y's Office*, 767 F.3d 379, 388 (4th Cir. 2014) (citing 42 U.S.C. § 1988(a)).  Suits filed under §§ 1983 and 1985 are most analogous to personal injury actions, *id.* (citing *Owens v. Okure*, 488 U.S. 235, 249–50 (1989)), which in Maryland are subject to a three-year statute of limitations.  *Id.* (citing Md. Code Ann., Cts. & Jud. Proc. § 5–101).

As to Simon's other Maryland state law claims, they are subject to the same three-year statute of limitations.  In Maryland, "[a] civil action . . . shall be filed within three years from the date it accrues unless another provision of the Code provides" otherwise.

Md. Code Ann., Cts. & Jud. Proc. § 5–101.   The same limitations period applies to

constitutional violations brought under the Maryland Declaration of Rights for which "no

other provision of the Code provides a different period of time for an action."   *Davidson v.

Koerber*, 454 F. Supp. 1256, 1260 (D. Md. 1978) (applying three-year statute of limitations

to Article 23 action); *Rich v. Hersl*, Civil Action No. ELH-20-488, 2021 WL 2589731, at

*12 (D. Md. June 24, 2021) (citing Md. Code Ann., Cts. & Jud. Proc. § 5–101) (applying

three-year statute of limitations to Article 24 action).   In sum, the three-year statute of

limitations applies to all other counts except for the civil RICO and civil RICO conspiracy

claims (Count IX), for which the applicable statute of limitations is four years.   *See CVLR

Performance Horses, Inc. v. Wynne*, 792 F.3d 469, 476 (4th Cir. 2015).

2.

Next, we set forth guidance for calculating the accrual date of Simon's claims under

federal and state law.   The accrual dates of Counts I, II, and IX (the §§ 1983 and 1985 and

civil RICO claims) are governed by federal law,[5] while the accrual dates of Counts IV, V,

VI, and VII (the Maryland Declaration of Rights, malicious prosecution, civil conspiracy,

and malicious use of process claims) are governed by Maryland law.

i.

---

[5] Although Simon's §§ 1983 and 1985 claims are governed by the Maryland statute
of limitations, "the time at which a § 1983 [or § 1985] claim accrues 'is a question of
federal law.' "   *McDonough v. Smith*, 588 U.S. 109, 115 (2019); *see also Cox v. Stanton*,
529 F.2d 47, 50 (4th Cir. 1975) ("The time of accrual of a civil rights action is a question
of federal law.").

10

Under federal law, an accrual analysis begins with identifying "the specific constitutional right" alleged to have been infringed, and then "referring to the common-law principles governing analogous torts." *McDonough*, 588 U.S. at 115–16 (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007)). The date of accrual occurs "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal [the] cause of action." *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995) (en banc) (citing *United States v. Kubrick*, 444 U.S. 111, 122–24 (1979)).

Put another way, under the "discovery rule," a cause of action accrues when the plaintiff has "actual or constructive knowledge of his or her claim." *Parkway 1046, LLC v. U.S. Home Corp.*, 961 F.3d 301, 307 (4th Cir. 2020) (citing *Thorn v. Jefferson-Pilot Life Ins.*, 445 F.3d 311, 320 (4th Cir. 2006)). Once a plaintiff obtains knowledge "that he has been hurt and who inflicted the injury . . . the plaintiff is on inquiry notice, imposing on him a duty to inquire about the details of [the offense] that are reasonably discoverable." *Nasim*, 64 F.3d at 955 (citing *Kubrick*, 444 U.S. at 123). However, "[w]here . . . a particular claim may not realistically be brought while a violation is ongoing, such a claim may accrue at a later date." *McDonough*, 588 U.S. at 115 (citing *Wallace*, 549 U.S. at 389).

ii.

Maryland law is largely consistent with federal law on accrual. *Burley v. Baltimore Police Dep't*, 422 F. Supp. 3d 986, 1018 (D. Md. 2019). Under Maryland's discovery rule, "a cause of action accrues only when the claimant knows or should know of the wrong." *Lumsden v. Design Tech Builders, Inc.*, 358 Md. 435, 445 (2000).

11

Applying Maryland's "discovery rule involves a two-prong test." *State Auto. Mut. Ins. v. Lennox*, 422 F. Supp. 3d 948, 964 (D. Md. 2019). "[T]he first prong, 'sufficiency of the actual knowledge to put the claimant on inquiry notice,' concerns 'the nature and extent of actual knowledge necessary to cause an ordinarily diligent plaintiff to make an inquiry or investigation that an injury has been sustained.' " *Id.* (quoting *Georgia-Pacific Corp. v. Benjamin*, 904 A.2d 511, 528–29 (Md. 2006)). Constructive knowledge is not enough. Rather, the plaintiff must have express knowledge from "sources 'cognizant of the fact[s]' " or implied notice, meaning "knowledge sufficient to prompt a reasonable person to inquire further." *Benjamin*, 904 A.2d at 529 (citations omitted). "The second prong, 'the sufficiency of the knowledge that would have resulted from a reasonable investigation,' requires that after a reasonable investigation of facts, a reasonably diligent inquiry would have disclosed whether there is a causal connection between the injury and the wrongdoing." *Lennox*, 422 F. Supp. at 964 (quoting *Benjamin*, 904 A.2d at 529).

## B.

Simon's claims can be divided into two groups based on the source of their underlying harm.

The first group of claims, composed of Counts I, II, IV, V, and VII, arose from the chain of events beginning with his March 26, 2014, arrest and his February 5, 2015, release from custody. We conclude that these counts accrued no later than February 5, 2015. On that date, Simon knew that the alleged basis for his arrest—possession of a gun—was faulty because he knew that he did not possess the gun. He had some knowledge of the names of the GTTF officers who unlawfully arrested him because they filed a false statement of

12

probable cause justifying the arrest. And he knew all criminal proceedings brought against him were terminated in his favor on January 16, 2015. Under both state and federal discovery rules, Simon thus had express knowledge of his injury, which was sufficient to put him on inquiry notice of the officers' wrongdoing, and so the statute of limitations began to toll.[6] *See Nasim*, 64 F.3d at 955; *Benjamin*, 904 A.2d at 529.

The second group of claims, composed of Counts VI and IX, were grounded in the officers' alleged conspiracy and racketeering. On March 1, 2017, seven GTTF officers (including Jenkins) were arrested on federal racketeering charges, among others. When the officers were arrested, Simon was already aware of his injury and its source. *See Nasim*, 64 F.3d at 955 (citing *Kubrick*, 444 U.S. at 123). Because he was thus on inquiry notice, Simon had "a duty to inquire about the details of [the offense] that were reasonably discoverable." *Id.* At that point, based on the officers' arrest and extensive news coverage thereof, Simon had constructive knowledge of his claim. *See Parkway*, 961 F.3d at 307 *(citing Thorn*, 445 F.3d at 320). Though this constructive knowledge did not suffice to start the clock on his Maryland civil conspiracy claim, *see Benjamin*, 904 A.2d at 529, it did suffice for his federal RICO claims. *See Parkway*, 961 F.3d at 307. Thus, on March 1, 2017, the statute of limitations for Simon's civil RICO claim, at least, began to toll.

---

[6] Simon thinks Gladstone's 2019 plea agreement and the victim rights letters he received in March 2019 and February 2020 were necessary for him to discover his claims. But the accrual of the statute of limitations does not begin when a plaintiff has actual knowledge of the "full extent of the injury." *Wallace*, 549 U.S. at 391. It requires only "sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action," *Nasim*, 64 F.3d at 955, which it is clear Simon possessed by February 5, 2015, from the face of the amended complaint. *See Forst*, 4 F.3d at 250.

Of all Simon's claims, his civil RICO claim under Count IX stands the greatest chance of surviving Defendants' statute of limitations defense. Count IX is both subject to the longer statute of limitations—four years—and the later accrual date—March 1, 2017. But even Count IX is time-barred. Simon filed his original complaint on March 7, 2022, over a year after his civil RICO claim had expired under the four-year statute of limitations. Because Count IX is time-barred, so too are the rest of Simon's claims with shorter statutes of limitations and earlier accrual dates.

## C.

Last, we address Simon's argument that equitable tolling and fraudulent concealment paused the limitations clocks such that his claims are not time-barred.

The Supreme Court set forth a two-part test to determine whether a plaintiff is entitled to equitable tolling of a statute of limitations. A plaintiff must show: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 256 (2016) (quoting *Holland v. Florida,* 560 U.S. 631, 649 (2010)). This court has set forth a separate three-step test for determining whether a plaintiff is entitled to relief from a limitations period based on fraudulent concealment. In those cases, a plaintiff is required to show: (1) the defendant fraudulently concealed the facts underlying the claim, and that (2) the plaintiff failed to discover those facts within the statutory period, despite (3) the "exercise of due diligence." *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 218 (4th Cir. 1987) (citing *Weinberger v. Retail Credit Co.*, 498 F.2d 552, 555 (4th Cir. 1974)).

14

Simon does not set forth any allegation that Defendants fraudulently concealed facts underlying his claims, nor does he allege that he diligently investigated whether he had a cause of action after he was released from incarceration on February 5, 2015. Instead, to support his arguments on appeal, Simon invites us to consider a massive number of documents via hyperlink embedded in the complaint along with exhibits attached to the parties' briefing. The documents include a six-hundred-page investigative report on the corruption within the GTTF, prior lawsuits and court documents detailing one or more of Defendants' misconduct, and related news articles. J.A. 17–60, 337–588. Although not dispositive of the tolling issues, these documents generally indicate that the corruption within the GTTF was highly publicized and documented in public records, not concealed. Thus, Simon's suggestion that he could not have fully discovered his individual claims without knowledge of these broader allegations of misconduct is misplaced.

## VI.

While we are disturbed by the egregious civil rights violations alleged against Defendants, we are bound to apply the applicable statutes of limitations and accrual requirements to Simon's claims. Application of these rules compels the conclusion that Simon's claims were filed outside the applicable statutes of limitations periods, are not subject to tolling, and are time-barred. The district court's dismissal of Simon's amended complaint is therefore affirmed.

*AFFIRMED*